THE ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY v. THOMAS H. TINDALL.

No. 8804.

57   719
58   240
57   719
61   454
57   719
73   490
73   492

1. NEGLIGENCE—*not presumed from defect in track, and injury; must be proof company knew, or should have known, of defect.* In an action by an employe to recover damages from a railroad company for personal injuries alleged to have resulted from a defect in the railroad track, negligence will not be presumed, but must be proved. Testimony that there was a defect in the track, and that an injury occurred, is not enough to warrant a recovery. It is necessary to prove that the company knew of the defect, or that it was of such a nature or had existed for such a length of time that, in the exercise of ordinary care, it should have been discovered by the company. [DOSTER, C. J., dissenting, as to the application to the facts of the case.]

2. RECKLESSNESS OF EMPLOYE—*in voluntarily preferring dangerous to safe position, precludes recovery for consequent injury.* If such employe voluntarily and needlessly places himself in a highly dangerous position, when there is a reasonably safe one provided for him, and he has time to exercise his judgment and choose a safer place, and injury occurs to him by reason of his choice, he ordinarily cannot recover for such injury.

3. NEGLIGENCE—*evidence of held insufficient in action by employe.* The testimony examined, and *held* to be insufficient to sustain the verdict and judgment.

*Error from Douglas District Court.*
*Hon. A. W. Benson, Judge.*

REVERSED AND REMANDED.       OPINION FILED MARCH 6, 1897.

*A. A. Hurd, W. Littlefield* and *O. J. Wood,* for plaintiff in error.

*Waters & Waters,* for defendant in error.

JOHNSTON, J.   This was an action by Thomas H. Tindall against the Atchison, Topeka & Santa Fe Railroad Company to recover for personal injuries alleged to have been suffered by him through the negligence of the Company.   Tindall was a locomotive fireman engaged in the service of the Company in New Mexico, and, on the night of November 2, 1889, he was upon a locomotive with Thomas Williams, an engineer.   They brought a train into the yards at Raton about midnight, and, no brakeman being present to uncouple the engine from the train or pilot it into the roundhouse, Tindall was directed by the engineer to uncouple the engine, which he did.   Instead of getting back into the cab, Tindall then took a position on the front end of the engine, sitting upon the pilot beam, with his feet resting upon the pilot.   The first switch to be thrown was between 300 and 400 yards from the starting point, and upon a signal from him to the engineer the engine was moved forward at a rate of about five miles an hour.   There had been a storm, and snow was falling, and there was snow upon the pilot and front end of the engine.   Tindall had a lantern upon his arm, and with one hand held onto the pilot-brace.   While reaching to his hip pocket with the other hand to obtain his gloves there was a jar of the engine which caused him to fall from the pilot.   One of the wheels of the engine passed over

and crushed his arm so that amputation above the elbow was necessary. He alleges that the injury was caused by the negligent construction and maintenance of the track at the place where the injury occurred, and that the defect in the track was such that, with proper diligence and care on the part of the Company, it could have been discovered and remedied in time to have prevented the injury. The Company denied the charge of negligence, and averred that the injury was the result of his own carelessness. At the trial, the jury found that the injury was due to the negligence of the Railroad Company, and awarded $5,500 to Tindall as damages.

The sufficiency of the testimony to sustain the verdict is the first question to which our attention is directed. On the part of the Company it is contended that the track was not defective or dangerous, and that, if there was a defect, the Company did not know, and could not by the exercise of ordinary care have known, of its existence. What the defect was is not shown, and what caused the jar of the engine is a mystery not solved by the testimony. Williams, the engineer, testified: "At the time he fell I felt a jar of the engine, as if we struck a rough place in the track. Of course I couldn't tell just what it was, but it felt like a low joint." Again he stated: "I felt a jar of the engine as if there was a rough track. At the time of course I couldn't say exactly what kind of a track it was, but the track was rough there at that time; at least it felt that way." After stating that some jars were usually felt upon the engine, he testified that the one that occurred when Tindall fell off the engine was "above the ordinary." In answer

to an inquiry as to how he came to fall from the pilot of the engine, Tindall testified as follows :

"It felt like she came against something, and struck pretty hard, and I was thrown off.

"Q. What was the matter with that track, if you know? A. There was a rough piece of track.

"Q. You are conversant with the condition of the tracks in the yard limits and on the main-line track? A. Yes, sir.

"Q. State to the jury how it compares in point of roughness with the ordinary siding and the ordinary switches, if you know. A. Well, we are used to ordinary bumps on the tracks ; we don't pay any attention to those. You have always to look for ordinary track.

"Q. Well, what was this? A. Well, this was over the ordinary rough track."

As the jury have found, there was no evidence to show that there was a low joint in the track where the injury occurred. Shortly after the injury, Tindall requested an employe in the yards, named Bennett, to make an examination of the track at the place of the injury, which he did ; but he did not find any low joint there, nor anything wrong with the rails, except that two bolts were gone from one of the joints. The rails were in their proper places, and were spiked down all right ; and the jury have found that the absence of the two bolts in the fish-plates joining the rails did not render the track dangerous upon which to run an engine at the speed of five miles per hour. It appears that the tracks in the yards are not as smooth and as solid as the main-line track ; and that they are not required to be maintained at the same standard of perfection as the main-line track, where greater speed is necessary, is conceded. There were employes in the yards whose

*3. Evidence held insufficient.*

duty it was to maintain the tracks in suitable condition, and, although said to be "somewhat rough," no particular defect has been pointed out. Wherein was the Company negligent? No one discovered any defect in the track, and no one knew what caused the jar. While to one witness it felt like a low joint, yet, upon examination, none was found; and, at the place where the injury occurred, it is not shown that the track was out of alignment or out of repair. Whether the jar was caused by a defect in the track, or a temporary obstruction, the evidence does not show. If it be granted that there was a defect in the track, when did it become defective? Did it exist five minutes, five hours, or five days; prior to the injury? Was it so obvious that the Company or those in charge of the track should, in the exercise of ordinary care, have discovered it? There is no proof that the Company knew of the existence of a defect, and nothing to show that it had either notice or opportunity to discover it. Indeed, there was no proof at all of what the defect was. A finding of negligence cannot rest upon mere conjecture. As the court instructed the jury, "negligence can never be presumed, but must be proved." Testimony that there was a defect in the track and that an injury occurred, does not establish culpable negligence on the part of the company. In *Harter v. Railroad Co.*, 55 Kan. 250, this doctrine was recognized, and Mr. Justice ALLEN remarked:

1. Negligence not presumed from existence of defect.

"This, however, is not enough to warrant a recovery against the defendant. There must be evidence fairly tending to show either that the defendant knew of the existence of the defect, or that, in the exercise of reasonable and ordinary care and diligence, the defect could have been discovered before the accident."

This principle was held to be controlling in *Car-*

*ruthers* v. *Railway Co.*, 55 Kan. 600, where the CHIEF JUSTICE said :

"It is necessary to allege and prove, among other things, that the defendant knew of the defect, or that it was of such a nature or had existed for such a length of time that in the exercise of ordinary care it should have been discovered by the defendant, in which case notice ought to be presumed ; and where there is no evidence of such notice or its equivalent, a demurrer to the evidence is properly sustained."

As it was not shown that the Company knew of any defect, or that it should have known of its existence, the proof is insufficient to sustain the charge or finding of negligence.

It is next contended that Tindall voluntarily and unnecessarily took a dangerous position on the front of the engine, when he could and should have chosen a safer place in the cab. The position taken by him appears to have been one of great danger. It was in the nighttime and it was dark and windy. There had been a snowstorm and there was snow upon the pilot. The engine was the ordinary one used on the main-line, without footboards, hand-rails or other provisions for carrying employes on the front, such as may be found on switch-engines. A position on the pilot or pilot-beam of such an engine is generally regarded to be somewhat dangerous, but the hazard must be greatly increased when the pilot is covered with snow. Tindall had no duty to perform which required him to ride on the front of the engine. The jury find that he voluntarily assumed the position, as the engineer did not direct him to ride there, and no rule of the Company required it. The cab was the place provided for riding upon the engine, and, as the jury find, it was a much safer place than the one which he took. It was also found by the jury that he could

have performed the duties required of him by riding in the cab instead of on the front of the engine; and the question of whether he should have taken the safer place is one of great importance. If he voluntarily and needlessly took a highly dangerous place when a reasonably safe one was provided for him, he ordinarily could not recover for resulting injuries. *Railway Co. v. Estes*, 37 Kan. 715. The case of *Railway Co. v. McCally*, 41 Kan. 639, is referred to and relied upon, but the facts of that case differ materially from those of the present case. There, it was shown that the swichman would necessarily have to get on the pilot of the engine to make the couplings and perform the duties required of him, while in the present case there was no duty which required Tindall to assume the perilous position which he took. In the McCally case the immediate cause of the injury was the reckless misconduct and gross mismanagement of the engineer in charge of the engine that was used in doing the switching, while in this case the jury have found that the engineer of the engine upon which the plaintiff was riding was not guilty of negligence. The cases differ in other respects, but, however much they may correspond, we think it was the duty of the Court, upon request, to submit to the jury the rule of law referred to in the Estes case. The following instruction was requested and refused:

2. Recklessness precludes recovery.

"The jury are instructed that if, in the discharge of a duty, an employe of a railroad company voluntarily places himself in a dangerous position unnecessarily, when there is another place that is safer that he could have chosen, and he has time to exercise his judgment, and injury occurs by reason of his choice, he cannot recover for such injury."

Other instructions embodying the same view of the

law were requested and refused, and while the jury were told in a general way that the plaintiff could not recover if his own-negligence contributed proximately to the injury, no declaration of law like the one requested was given.   It is substantially the rule as laid down in the Estes case, and, in view of all the testimony of the case, we think the Company was entitled to an instruction like the one requested.

The judgment of the District Court will be reversed and the cause remanded for further proceedings.

ALLEN, J., concurring.

DOSTER, C. J.   I concur in the reversal of this case because of the apparent negligence of the defendant in error, and the failure of the Court to instruct thereon as requested by the plaintiff in error ; but I dissent from the view of the majority of the Court, that knowledge of the defect causing the injury in question is not imputable, under the evidence, to the plaintiff in error.   A railroad company is presumed to have knowledge of a defect in its machinery, or a dangerous condition of its track, existing under such circumstances as to give it reasonable opportunity to learn of the same. . What that length of time may be, depends upon the circumstances of each particular case.   In this case the injury was caused, proximately or otherwise, by some defective condition of the track in the Company's switch-yards, of such a character, and existing for such length of time, as to have been known to the Company, or ascertainable by it in the exercise of the duties it owed to its employes.   The testimony of Mr. Williams, the engineer in charge of the engine from the pilot of which the defendant in error was thrown, is, that he felt in his station in the cab a jar, as of running over a rough place, seem-

ingly like a low joint. In immediate concur-
rence with such jar the defendant in error fell from
his position. No witness pretends to account for
such jar upon any other theory than a bad place in
the track, and the jury found that the defendant in
error was thrown from his position by the running of
the engine over a rough place in the track. Had
such place been out on the main line, observable only
by section men with several miles of road under their
charge, and a consequent lack of opportunity and
time to discover and repair it, knowledge of the same
could not, perhaps, be imputable to the Company,
unless its existence had been known for some time ;
but the defect in question was in the Company's
yards at a division point, where scores of its em-
ployes, some of them managers of its interests in
such respect—its vice-principals, such as superin-
tendents, road-masters, track-inspectors, and section
foremen — were passing over its grounds all hours of
the day, and to some extent during the night. A de-
fect in the track at such place, serious enough to have
caused or contributed to the injury in question, could
have been known to some of them had they been dili-
gent in the performance of their duties. The only
answer that can be made to this proposition is, that
such defect may have been of such recent origin and
short existence as not to have been brought home to
the knowledge of the managing employes. I deny
it. A rough place in the track caused by a defective
tie, a low or springing joint, a warped or worn rail,
cannot, in reason, come into such ill condition in a
moment, in an hour, nor in a day, but must grow gradu-
ally into such condition. Some stress was laid in ar-
gument upon the fact that railroad companies, in the
commendable practice of economy, put their defective

rails and ties into their switch-tracks, so as to preserve the better ones for service at other points where most required. Such may be admitted, and no fault be found; but that does not relieve such companies from the obligation to use such rails and ties, and maintain their tracks in such repair, as will respond to the demands of the service, less onerous, though they be, than the requirements of other parts of the line. The defect in question must, in the nature of things, have existed for such a length of time, and so plainly in the sight of the Company's managing agents, as to charge it with knowledge of its existence.

Little importance should be attached, I think, to the fact that, upon examination of the place where the accident occurred, evidences of only a slight defect in the track were discovered. This examination was many hours after the occurrence, and after ample time to repair the defect had elapsed. A motive upon the part of the responsible parties to obscure the defect existed, and the fact that no defect of consequence was discovered, furnishes ground to suspect that it had been repaired.

As an abstract proposition of law, the first syllabus of the opinion of the Court is correct; but I believe its application to the facts of this case is unwarranted.