The Atchison, Topeka & Santa Fe Railroad Company v. George H. Swarts.

No. 9847.

1. APPELLATE PROCEDURE — *court will not consider weight of evidence nor credibility of witnesses.*  This court will not review evidence for the purpose of determining its sufficiency to uphold a verdict which has been approved by the trial court, even though such verdict is founded upon the testimony of a single and interested witness and opposed by the testimony of many disinterested witnesses.

2. ANSWER BY JURY — " *do n't know," a finding that fact inquired about is not proved.*  Where a jury answer questions as to

the existence of facts material to the case of a party, by saying "We cannot determine," or "We don't know," such answers are, in legal effect, a denial of the existence of such facts, and operate to prevent a judgment in favor of the party whose case requires proof of the same. (Doster, C. J., dissenting as to the application of the rule to this case.)

3. RAILROAD EMPLOYEE—*injured by defects in track, company not liable unless it had, or may be presumed to have had; actual knowledge of defects.* A railroad company is not liable to an employee for injuries occurring through defects in its switch tracks in its yards, without proof of actual knowledge upon its part of such defects, or proof of their existence for such a length of time that knowledge thereof may be inferred. (Doster, C. J., dissenting.)

4. ——— *has right to assume tracks reasonably safe.* It is the · duty of a railroad company to so construct and maintain its tracks as to make them reasonably safe for its employees to perform their duties; and a person entering its service has a right to assume that this obligation has been discharged.

Error from Butler District Court. Hon. C. W. Shinn, Judge. Opinion filed May 8, 1897. *Reversed.*

*A. A. Hurd, W. Littlefield* and *O. J. Wood*, for plaintiff in error.

*Waters & Waters* and *Smith & Rees*, for defendant in error.

DOSTER, C. J.   The defendant in error was a switchman and yard brakeman in the yards of the plaintiff in error at Winfield, Kansas, and had his left hand injured while endeavoring to effect a coupling between cars in the yards.   He sued for damages for such injury, upon the ground of the Company's negligence in the maintenance of its switch tracks at the point where the accident occurred.   He was the only witness in his own behalf.   Upon the vital points in controversy, the Company opposed to him seven of its other employees.   His testimony was to the effect that he was an experienced switchman and brakeman, having been engaged as such eight or nine years, and that he had

been at work in the yards at Winfield eight or ten days before being injured. In the early morning, while it was yet dark enough to require the aid of a lantern, he endeavored to make a coupling between cars, and to do so stepped across the rail and into a hole between two ties. To quote his testimony :

"As I reached in to take the link on the still car, my foot slipped in a hole like, and I went down. I threw my hand up like, and I had my eye glanced down, and there saw the hole ; and just at that point there came a general surge ; they went right on, and as I straightened myself up I found that I was fast. Had not done switching on that track in daylight. The hole was like two ties as generally laid — there was no dirt, as I discovered, between them. The hole was from four to six inches deep and extended clear across the track. The distance between the ties, at the place where I got hurt, and the hole where I got hurt, was about eighteen inches. It extended clear across the track, and was from four to six inches deep."

The testimony of all the Company's witnesses was to the effect that there was no hole between the ties at the place where the injury occurred, and that most of the width of the track between rails was " surfaced up" even with the ties, with the dirt sloping down under the rails toward the ends of the ties. One witness said : "The track there was like any ordinary main line ; it was surfaced up in the middle and sloped off." Another said : "The track was in first-class condition as a mud road, laid with old iron. Good first-class side-track in good condition." Two of the Company's witnesses testified to declarations made by the plaintiff a few minutes after the accident, contradictory of his testimony as to the fault of the Company in causing it. It was also shown that defendant in error, in applying for payment of an accident insurance policy on account of his injury, stated

as the cause of the same : "I was coupling cars, and slipped over a tie as I stepped in to take hold of link to make coupling, and caught my hand between the draw-bars."

One of the witnesses for plaintiff in error testified : "The ordinary duties of a switchman going into a strange yard, would be to inform himself of the condition of the yard." Another of the witnesses testified : "There was nothing to prevent the plaintiff seeing and knowing the condition of these tracks if he would look at them ; he had the means and time to inform himself concerning the condition of the track there. It was his duty as a switchman to look at the tracks in doing his work." Another of its witnesses testified : "I had charge of the track department. My duties with reference to the track were to examine it and see if any repairs were necessary, and to have it done ; to keep the track in good, safe running order for trains, and if there were any defects to have them remedied. I looked the tracks over sometimes twice a day, sometimes once a day, different times ; sometimes once a month, sometimes not so often."

The principal issues of law in the case arise upon the foregoing summary of evidence and upon certain special findings of the jury. The verdict and judgment were for the plaintiff below ; to reverse which judgment this proceeding in error is brought.

It is strenuously contended that the general verdict of the jury, and their special finding that there was a hole in the switch-track which caused the injury to the plaintiff, are against the evidence, and that we should so declare as matter of law ; and many cases are cited in support of this contention, some of which would seem to lend countenance to the views of the plaintiff in error. *Kaare v. T. S. & I. Co.* (139 N. Y. 369) is cited as directly in point. It was

there held: "Where there is a vast preponderance of evidence in favor of defendant, whose witnesses are apparently entitled to credit, while plaintiff's case stands on his own evidence but slightly supported, the refusal to defendant of a new trial is subject to review by the General Term." The opposite rule has, however, too long prevailed in this State, and is supported by reasons too satisfactory, to justify departure therefrom. We cannot usurp the province of the jury and the trial judge, who saw and heard the witnesses testify. Where there is direct and positive testimony by a single witness, even though an interested one, who stands unimpeached except in the sense of being contradicted, it must prevail in this court, even though opposed by the testimony of many others, where, as in this case, it has been approved by both jury and judge below as more credible than the testimony of the many in opposition.

*1. Court will not weigh evidence, etc.*

It is claimed that the evidence in the case failed to establish negligence upon the part of the Railroad Company, and also that, by two special findings of the jury, it was acquitted of negligence. These findings are as follows:

"Ques. Did it not (referring to the hole), by its appearance, indicate that it had been in that condition for a considerable time? Ans. We cannot determine how long.

"Q. Did defendant have any knowledge of defect in the track or hole, if any there was, at the time of the accident? A. We do not know."

These answers, under former decisions construing others of a like kind, are to be taken as negativing the existence of the facts necessary to charge the Company with liability; and are therefore equal in effect to an affirmative finding that the Company had no knowledge of the hole in its track, and also that such

hole had not been there for such length of time as to charge the company with negligence in allowing the same. *Morrow v. Comm'rs of Saline Co.* (21 Kan. 484), *A. T. & S. F. Rld. Co. v. McCandliss* ( 33 id. 366), and *K. P. Rly. Co. v. Peavy* (34 id. 472), support this construction of these questions and answers. In the case first cited, it is said :

" Where to a question the jury respond, ' We do n't know,' or in any like manner, such an answer is tantamount to a simple denial; for, if from the testimony the jury do not know whether an alleged fact exists, it follows that the testimony does not show that it exists; and therefore for the purposes of the case it does not exist. Such an answer operates against the party whose case needs the support of the alleged fact."

**2. Answer "do n't know" means not proved.**

The jury having thus found, in legal effect, that the Company had no actual knowledge of the existence of the hole in its track which brought about the plaintiff's injury, and having also found, in legal effect, that such hole had not existed for such length of time as to charge the Company with knowledge of its existence, the plaintiff's case, under the numerous decisions of this court, must fail. The rule is unquestioned, that, in order to charge a master with the consequences of an injury resulting to a servant from the use of defective machinery or other appliances with which the servant is at work, it must appear that the master knew of the defective character of such machinery or appliances, or that, in the exercise of reasonable or ordinary care and diligence, he ought to have known of the same. *Caruthers v. C. R. I. & P. Rly. Co.*, 55 Kan. 600 ; *Harter v. A. T. & S. F. Rld. Co.*, 55 id. 250 ; *A. T. & S. F. Rld. Co. v. Ledbetter*, 34 id. 326 ; *A. T. & S. F. Rld. Co. v. Wagner*, 33 id. 660.

**3. Company not liable for defects in track, when.**

In *A. T. & S. F. Rld. Co. v. Tindall* (57 Kan. 719),

the doctrine was again declared by all the justices. Its application to the particular facts of that case was, however, denied by the writer of this opinion; and its application to the facts of this case is likewise denied by him. His dissent in *A. T. & S. F. Rld. Co. v. Tindall*, supra, was based upon the fact that the defective track causing the injury existed in the Company's yards — a place constantly and directly under the eye and supervision of the Company's managing agents; and, as might have been said in that case, and as is now said in this case, a place which, from the constancy of its use and the number of employees using it, required a high degree of watchfulness and diligence to avoid defects and to make repairs. Failure to learn of the defective condition of a main line, which is not, and cannot be, constantly under the eye of track repairers, may be excused for a much greater length of time than the like failure to observe the defective condition of a switch track in the Company's yards at a division or other terminal point;—this, because of the number of officials, representative of the principal, who are constantly passing and repassing through such yards, many of whom are especially chargeable with the duty of observing defects and repairing them.

It is conceded that the burden of proving knowledge of the defect in question rested upon the plaintiff. The discharge of that burden required proof of actual knowledge of the existence of the defect, or proof of its continuance for such length of time that knowledge can be fairly inferred; but, in the latter case, the necessity of direct proof of the continuance of the defect for a particular length of time is denied. Proof of the necessary length of time is supplied by a presumption arising out of the case. That presumption is, that a defect existed under the very eye of the master, as it

16—58 KAN.

were, was observed by, and therefore known to, him. Such presumption supplies the place of proof by the plaintiff, and throws upon the Company the burden of proving that the defect did not exist for a sufficient length of time to charge it with knowledge. In this case, the jury found there was a hole in the switch track. That switch track was in the Company's yards; a place, as has been repeatedly said, under the constant, daily, to a large extent nightly, observation of the Company's managing agents. It is incredible that such a hole could exist at that place and not be known to some one whose duty it was to fill it up. No conceivable cause for its existence, other than the attrition of the elements or the designed digging of the same by the Company's employees for some proper purpose, can be said to exist. In the latter case, the Company of course had knowledge. If caused by the elements, it must have been of gradual deepening and widening;—it was not blown out or washed out in the course of a few hours' time. If produced by some unusual or extraneous circumstance, it rested upon the Company to prove it. The writer believes that the law as he has tried to state it is well settled; and that his brethren, in the determination of such cases as this and that of *A. T. & S. F. Rld. Co. v. Tindall*, supra, have not taken sufficiently into account the character of the place where the injuries occurred, the larger measure of responsibility resting upon the Company at such points, the greater opportunity for observation, the exercise of supervisory power by the Company's agents there, and the presumption of knowledge upon the part of the Company arising under these circumstances. Mr. Patterson, in his work on Railway Accident Law (§.375, page 438), says:

"There is rebuttable presumption of negligence on

the part of the railway in the case of an injury caused by circumstances from which may be fairly inferred a non-performance of duty on the part of the railway. In some cases 'the very nature of the accident may of itself, and through the presumption it carries, supply the requisite proof ;' Wharton on Law of Negligence, ¶ 421. Thus where circumstances are proved from which it may fairly be inferred that there is a reasonable probability that the accident resulted from the want of some precaution which the railway might, and ought to, have resorted to, there is, in the absence of explanation by the railway, a presumption of negligence upon its part, or, as the rule is put in *Scott v. L. & St. K. Docks Co.*, 3 H. & C. 596 : 'Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care.' In *W. T. Co. v. Downer*, 11 Wall. 129, Field, J., thus states the rule : 'A presumption of negligence from the simple occurrence of an accident seldom arises, except where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement, or misconstruction of a thing over which the defendant has immediate control, and for the management or construction of which he is responsible.' See also *Railroad v. Mitchell*, 11 Heisk. 400. This rule has been applied in cases where passengers were injured by the breaking of an axle of a coach, see *Christie v. Griggs*, 2 Camp. 79 ; or by the careless driving of a coach, *Stokes v. Saltonstall*, 13 Pet. 181 ; or by the coming off of a wheel of a coach, *Ware v. Gray*, 11 Pick. 106. This presumption has been held to furnish proof of negligence in cases of collision between two trains operated by the same railway, *Skinner v L. B. & S. C. Rly.*, 5 Ex. 787 ; *I. Rly. v. Mowery*, 36 Ohio St. 418 ; *N. O. J. & G. N. Rld. v. Allbritton*, 38 Miss. 242 ; also in the case of a collision between two street cars, *Smith v. St. P. C.*

*Rly.*, 32 Minn. 1 ; also in the case of a collision between a train which leaves the main line and cars on a siding, *N. Y. L. E. & W. Rld. v. Seybolt*, 95 N. Y. 562 ; also in the case of the explosion of the boiler of a locomotive engine, *Robinson v. N. Y. C. & H. R. Rld.* 20 Blatchf. 338 ; also in cases of the derailment of railway cars, *Dawson v. M. Rly.*, 7 H. & N. 1037.

In Addison on Torts (7th ed.) 22, it is said :

" Where the actual thing causing the injury is solely under the management of the defendant, and the accident is one which would not, in all probability, happen if the person managing the thing was using due care, it has been held that the mere occurrence of the accident is sufficient *prima facie* proof of negligence to impose on the defendant the onus of rebutting it."

But, over and beyond all this, the writer does not believe that the findings heretofore quoted can be construed into a denial of the continuance of the hole for a length of time sufficient to impart knowledge to the Company.   The question was not whether the hole had been in existence for a considerable time, but whether *its appearance indicated* that it had been in existence for such time.   This is the plain import of the question.   The inquiry related, not to the *fact* of long continuance, but to the *appearance* of long continuance of the hole ;—to the writer's mind an unimportant and irrelevant matter, but, nevertheless, the subject of the inquiry.   It is true, the jury responded, " We cannot determine for how long," as though they were answering to the fact and not the appearance ; but where it is sought to impeach the general verdict by the special findings, such findings should be so construed as to make them harmonize with such verdict if possible, and not construed to secure its overthrow unless the strict sense of the language used requires such to be done.   *Sol-*

*omon Rld. Co. v. Jones*, 34 Kan. 443. The jury were not asked about facts, but were asked about appearances; and their answer must be understood as responsive to the question, and to nothing else. But the question and answer, even considering them as related to the facts and not the appearances, are meaningless — senseless, really. What is meant by a "considerable time," as related to the duration of a defect in railroad tracks which will charge the Company with knowledge? Suppose the jury had found in plain terms : "The hole did not exist for a considerable time." Who would have been the wiser as to whether it had existed long enough to enable the Company's responsible agents to discover and repair it? Such a finding would have been too indefinite to aid in the determination of the disputed question.

The writer's conclusion, therefore, is, that, as to whether the hole had existed long enough to enable the Company to discover and repair it, there is no finding; and that, as to such matter, we must be guided by the general verdict of the jury. That verdict was in favor of plaintiff below, defendant in error here, and it ought to be allowed to stand ; but, for the reasons first given, it is otherwise ruled.

Complaint is made that the court erred in refusing requests for certain instructions concerning the obligation of defendant in error to acquaint himself with the condition of the Company's yards and tracks and the hazards of his employment. Such complaint, however, is unfounded. We reaffirm the case of *St. L. Ft. S. & W. Rld. Co. v. Irwin* (37 Kan. 701), and repeat what was there said :

4. Employee has right to assume tracks reasonably safe.

"It is the duty of a railroad company to so construct its tracks and bridges as will make them safe for its employees to perform their duties ; and a party

entering its service has.a right to assume that this obligation has been discharged."

Some other objections, though of minor importance, have been discussed by counsel, but they do not impress us as meritorious. However, for the error pointed out the judgment is reversed; but inasmuch as the findings do not negative the possible existence of facts necessary to enable the defendant in error to recover, but are merely to the effect of failure of proof on his part in respect of such facts, the case will be remanded for a new trial.

JOHNSTON and ALLEN, J. J., concurring. DOSTER, C. J., dissenting from the second and third paragraphs of the syllabus and the corresponding portions of the opinion.