## EMANUEL CARRIER v. THE UNION PACIFIC RAILWAY COMPANY.

**No 11,445.** (59 Pac. 1075.)

1. RAILROADS—*Injury to Employee—Contributory Negligence.* A brakeman engaged in coupling freight-cars went between the rails a few feet in front of an approaching train for the purpose of inserting a link in the drawhead of the nearest moving car when it should reach him. There were several inches of snow on the ground. He slipped when walking on the track and, falling, his leg was run over and crushed. *Held,* that he was guilty of negligence contributing to his injury.

2. ———— *Testimony Refused—Not Error.* The court refused to receive testimony offered by the plaintiff in rebuttal, for the purpose of showing that the manner in which he was attempting to make the coupling at the time of the accident was a customary method known to the railway company. *Held,* not error.

3. ———— *Contributory Negligence.* If the plaintiff voluntarily and knowingly adopted an unsafe, instead of a safe, way of doing the work mentioned, and thereby received injuries, he cannot recover therefor.

4. PRACTICE—*Erroneous Instruction.* A party cannot complain of an erroneous instruction given to the jury substantially in the language asked for by him.

Error from Saline district court; R. F. THOMPSON, judge. Opinion filed February 10, 1900. Affirmed.

### STATEMENT.

THIS was an action for personal injuries brought by the plaintiff in error against the railway company. Particular questions of fact were submitted to the jury. They returned answers to the same, together with a general verdict, in favor of the defendant below. The facts of the case found by the jury are, in substance, as follows :

The crew in charge of the train consisted of an engineer, fireman, conductor, and brakeman. Carrier was the brakeman. When the train, which was a south-bound one, reached Delphos, the rear part of it was left at the depot, while the locomotive with some cars attached went south of the depot for a considerable distance to do some switching. While the switching was going on the conductor was at the depot, and Carrier attended to the coupling of cars and to the giving of necessary signals for the movement of the locomotive. Some cars were standing on the main track which had to be coupled to those attached to the locomotive. Carrier made the couplings. While doing this work he was on the fireman's side of the engine. While the work was going on the engineer occupied his post on the right-hand side of the engine, where he attended to its operation. The fireman received the signals given by Carrier and transmitted them to the engineer. After Carrier had coupled up the cars standing on the main track, it was necessary for the cars attached to the locomotive to move north-ward from 600 to 900 feet before reaching the cars which had been left standing at the depot. There was no further coupling to be done until the cars at-

tached to the locomotive had been backed down to those standing at the depot.

After Carrier had coupled up the last of the two cars standing on the main track, the train immediately began to back toward the cars standing at the the depot, and Carrier started toward the north end of the moving train. The car he was compelled to walk past to get to the end of the train was thirty feet long, and as the cars were moving at the same time, the distance he walked must have been considerably greater than thirty feet. The object which Carrier had in view in going to the end of the moving train was to insert a link in the draw-head of the last car, so that he would be ready to couple the two portions of the train together when the depot was reached. He went about five or six feet ahead of the moving train and then started to step in between the rails for the purpose of inserting the link in the draw-head when the moving cars reached him. At that time the train was approaching at the rate of about four miles per hour. There were several inches of snow on the ground, which made it slippery and more difficult and dangerous for Carrier to get around. As he stepped between the rails to insert the link in the draw-head of the approaching car he slipped and fell, and had his leg run over and crushed. At the time he fell he was not in a position to be seen by either the engineer or the fireman, and the train was stopped just as soon as the engineer learned, from the motions and outcries of some boys near the track, that something unusual had happened.

Among others, the court gave to the jury the following instructions :

" 3. The burden of proof is upon the plaintiff, and before he can recover in this action you must find, from a preponderance of the evidence, that the plain-

29—61 KAN.

tiff, in the performance of his duty as a brakeman for the defendant, exercised ordinary care upon his part, and that said fireman and engineer, or one of them, were guilty of ordinary negligence at the time of the plaintiff's injury."

"10. If the jury believe from the evidence that there was a safe as well as an unsafe way for plaintiff to insert the link in the draw-head, and the jury believe from the evidence that plaintiff voluntarily and knowingly selected the unsafe way of doing it, and thereby received the injuries of which he complains, then I instruct you that plaintiff cannot recover damages against the defendant, even though you may also believe from the evidence that defendant and its employees were chargeable with negligence.

"11. If the jury believe from the evidence that in attempting to put the link in the draw-head plaintiff voluntarily placed himself in a dangerous position, when he could have inserted the link in the draw-head without exposing himself to danger, and that he thereby contributed to the injury received by him, then I instruct you that plaintiff was chargeable with contributory negligence, and cannot recover damages against the defendant, even though you may find that the defendant and its employees were also chargeable with negligence."

*E. W. Blair*, and *Garver & Larimer*, for plaintiff in error.

*A. L. Williams*, *N. H. Loomis*, and *R. W. Blair*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Complaint is made that the trial court erred in refusing to permit the plaintiff below, in rebuttal of testimony introduced by the railway company, to show that the manner in which Carrier was working about the cars while in motion was a customary method among employees of the company, of

which the latter had notice.   Under the circumstances, the act of plaintiff in error in stepping between the rails in front of a moving car was manifestly negligent.   He knew the surroundings.   There were several inches of snow on the ground.   While the train was approaching slowly, it was so close upon him that a false step or a fall on the slippery ground would almost certainly result in injury, perhaps death.

Could the plaintiff below have avoided the effect of his own recklessness by proving that the way he attempted to do the work was customary, and that want of care was the rule among the employees of the road performing similar duties, and due caution the exception?   We think not.   His contributory negligence defeated his right of recovery.   The question was whether he was responsible for his own injury.   This responsibility could not depend on whether other employees of the road, similarly situated, engaged in negligent practices, even with 'the knowledge of the company itself.   The standard of due care required of a person engaged in the hazardous business of railroading cannot be lowered by the habitual negligence of others in the same line of work.   The pertinent inquiry in such cases is whether the party himself was guilty of contributory negligence, and the degree of that negligence cannot be measured by comparing it with the negligent acts of others.   In *Loranger v. Railway Co.*, 104 Mich. 80, 86, 62 N. W. 137, 139, it is said :

" Employees cannot bind a company by the performance of such reckless acts, no matter how frequently they may do them.   It is abhorrent to reason and common sense to say that it is good and safe railroading and careful conduct for a brakeman to step in front of a train moving as fast as a fast walk, and perform a service which requires him to step sideways to keep out of the way, knowing that death is almost

sure to follow should he miss his footing. Testimony
that such conduct is prudent, and constitutes good
railroading, is incompetent and unworthy of cre-
dence.''

In the case of *S. K. Rly. Co. v. Robbins*, 43 Kan. 145,
23 Pac. 113, an action against a railroad company for
wrongfully causing the death of a passenger con-
ductor, the latter, in attempting to ascend a ladder at
the side of a freight-car while the train was running
at a rapid rate, fell therefrom and was killed. Tes-
timony was offered to show how railroad men ought to
and do ascend a ladder of a box car in such cases.
The court held such testimony to be incompetent;
that to allow the practice of others to be proved would
be to create a collateral issue as to the prudence of
their conduct, and unnecessarily protract the trial;
that the question before the jury was whether the de-
ceased was guilty of such negligence as to preclude a
recovery, and the practice or usage of others would
not tend to prove care on his part. (*George v. Mobile
& Ohio Railroad Co.*, 109 Ala. 245, 19 South. 784; *Lar-
son v. Ring*, 43 Minn. 88, 44 N. W. 1078; *Mason v.
Mo. Pac. Rly. Co.*, 27 Kan. 83; *C. R. I. & P. Ry. Co.
v. Clark*, 108 Ill. 113; *G. C. & Santa Fe Ry. Co. v.
Evansich*, 61 Tex. 3.)

The case of *Mo. Pac. Rly. v. McCally*, 41 Kan 639,
21 Pac. 574, is cited by counsel for plaintiff in error
as justifying the admission of the testimony excluded.
In that case an inquiry was permitted as to the usual
custom of brakemen in a railroad yard to ride on the
pilot of the engine in the performance of their duties.
The fact was disputed as to whether such act was ordi-
narily safe. Here a dangerous position was volun-
tarily chosen by Carrier, and the fact of its being
dangerous was obvious and not affected by the sur-
roundings. Nor do the cases of *K. C. Ft. S. & G. Rld.*

*Co. v. Kier*, 41 Kan. 661, 21 Pac. 770, and *St. L. & S. F. Rly. Co. v. French*, 56 Kan. 584, 44 Pac. 12, come up to the proposition contended for by the plaintiff in error.

It is insisted that the court erred in the third instruction, set out in the statement, for the reason that the jury were told that before the plaintiff could recover they must find from a preponderance of the evidence that the plaintiff, in the performance of his duty as a brakeman, exercised ordinary care on his part, thus shifting the burden of proof to the plaintiff below to show a lack of contributory negligence. The error of this instruction, if not induced, was at least condoned by the act of the plaintiff below, who requested that the court direct the jury as follows :

"3.  The defendant railway company is responsible for all damages sustained by reason of the negligence of its employees.  If you believe from the evidence that the plaintiff was in the exercise of ordinary care in the performance of his duty, and that he was injured because of the want of ordinary care on the part of the engineer or fireman, you should find for the plaintiff."

There was an unnecessary allegation in the petition in the case to the effect that the injury to the plaintiff in error was caused without fault or negligence on his part, and the instruction asked followed the language of that pleading.  The plaintiff in error is not in a position to complain of the action of the court.

It is further insisted that the court should have withdrawn from the jury all consideration of the circumstances in which plaintiff below was placed at the time of the injury.  Instruction No. 10 stated that if there was a safe as well as unsafe way for plaintiff to insert the link in the draw-head, and the jury believed from the evidence that he voluntarily and knowingly

selected the unsafe way of doing it, thereby receiving the injuries complained of, he could not recover. This instruction was in accordance with the rule laid down by this court in *U. P. Rly. Co. v. Estes*, 37 Kan. 715, 16 Pac. 131, in which it was said :

"If, in the discharge of a dangerous duty, an employee of a railroad company voluntarily places himself in a dangerous position, unnecessarily, when there is another place that is safer that he could have chosen, and he has time to exercise his judgment, and injury occurs to him by reason of his choice, he cannot recover for such injury." (See, also, *Railroad Co. v. Tindall*, 57 Kan. 719, 48 Pac. 12.)

In Bailey on Personal Injuries, volume 1, section 1121, the rule is thus stated :

"It is a familiar principle, which common sense as well as the rules of law ought to teach any one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence." (*Louisville & Nashville Railroad Co. v. Orr*, 91 Ala. 548, 8 South. 360 ; *Mobile & Birmingham Railway Co. v. Holborn*, 84 Ala. 133, 4 South. 146 ; *St. Louis Bolt & Iron Co. v. Brennan*, 20 Ill. App. 555 ; *Chicago & N. W. Ry. Co. v. Davis*, 53 Fed. 61, 3 C. C. A. 429.)

The jury found that there was no necessity for inserting the link in the draw-head at the time Carrier attempted to do so ; that if he had waited until the moving cars had got within close proximity to the cars standing at the depot, and had then signaled the moving train to stop, before inserting the link in the draw-head, and before making the coupling, he could have done the work without danger to himself. The jury also found that in stepping between the rails to insert the link in the moving train Carrier acted voluntarily, and furthermore, that he could have inserted the link in the draw-head in a manner less

dangerous than the way selected by him. Applying the rules of law to the facts thus found, it is quite clear that under the findings of the jury the defendant below was entitled to judgment.

The judgment of the court below will be affirmed.