No. 47,630

Dean W. Mechtley, *Appellant*, v. Ben Price, Jr. and Ruth Price, *Appellees.*

(536 P. 2d 1385)

Opinion filed June 14, 1975.

*Larry G. Pepperdine,* of Fisher, Patterson, Saylor and Smith, of Topeka, argued the cause, and *C. K. Saylor,* of the same firm, was with him on the brief for the appellant.

*David L. McLane,* of James E. Benfer, Chartered, of Topeka, argued the cause, and *James E. Benfer,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action by a farm employee against his employers to recover for personal injuries sustained when a horse he was riding stumbled and fell. Plaintiff has appealed from an order sustaining defendants' motion for summary judgment.

In his petition plaintiff Dean W. Mechtley alleged that on April 23, 1972, while in the employ of defendants Ben Price, Jr., and his wife Ruth Price at their three thousand acre cattle ranch near Reading, Kansas, and while riding a horse owned and furnished him by defendants, the horse fell on top of him fracturing his leg and ankle. Plaintiff alleged his injuries were the result of defendants' negligence; the horse fell because defendants failed to keep it properly shod; further that prior to the accident plaintiff requested defendants to reshoe the horse and defendant Ruth Price had promised to remedy the problem but this had not been done at the time the horse fell.

Defendants' answer denied any acts of negligence and pleaded contributory negligence and assumption of risk on plaintiff's part.

Depositions of all parties were taken prior to the filing of the motion for summary judgment. That of plaintiff revealed the following: Plaintiff, twenty-nine years of age, had been around horses most of his life; he had worked in the cattle and farming business for about thirteen to fifteen years; he owned his own saddle and had owned several horses; he was experienced in riding horses both domesticated and wild, shod and unshod, and had competed in riding events in rodeos; he had trimmed horses' hooves and had shoed them but did not consider himself very good; riding horseback was almost a daily occurrence with him; he had on three previous occasions had working horses which he was riding stumble and fall; on two occasions the footing was slick due to water or ice; he was aware that when a horse's hooves were grown out the horse was more likely to stumble whether shod or unshod and there was greater risk of falling with an unshod horse.

With respect to "Oakie", the horse which stumbled and fell upon the occasion in question, plaintiff further testified that about ten days or two weeks previous thereto, he had noticed Oakie was missing one shoe and his feet were overgrown; whereupon he called these facts to Mrs. Price's attention; Mrs. Price asked plaintiff if he would shoe Oakie; plaintiff answered he would rather not inasmuch

as Oakie's front feet were crooked and he was doubtful whether he could properly shape Oakie's hooves; Mrs. Price then replied she would secure the services of a farrier the next day but this never occurred; he talked to Mrs. Price a time or two later about the matter when he noticed a shoe lying on a farm road but he received no further answer from her; he had ridden Oakie almost daily since he had first spoken to Mrs. Price about shoeing Oakie; Oakie would stumble upon occasion whether shod or not and had once stumbled while plaintiff was riding him.

According to plaintiff on the day in question Mrs. Price directed him to go to a pasture and bring to the barn any cows which looked like they were about ready to calve; plaintiff drove in a pickup truck to the pasture in question to perform this task; Oakie was also in the same pasture; there were other saddle horses on the ranch available for his use but he preferred Oakie for several reasons—this horse was the closest at hand for the task as well as the most suitable and was easy to catch; plaintiff caught Oakie and was riding him when the accident occurred; he was herding two cattle at a walk back toward the barn when one of them turned; plaintiff reined Oakie to go after the cow and as Oakie turned he stumbled and fell on plaintiff's leg before plaintiff could extricate his foot from the stirrup of the saddle; at the time Oakie had on only one shoe; the day was a bright clear one and the terrain was level and dry; in plaintiff's opinion Oakie stumbled because his hooves were overgrown and he was not fully shod.

Defendant Ruth Price testified she could not recall whether plaintiff spoke to her about having Oakie shod prior to the accident; Oakie had a crooked left front leg; she kept a horse for herself to ride; there were other horses available on the ranch for plaintiff to ride. Defendant Ben Price, Jr., testified he did not know how many horses he owned in April, 1972. Each defendant had been in the cattle business all his life.

Defendants' motion for summary judgment was grounded on the contention the depositions on file revealed there was no genuine issue as to any material fact in the case and defendants were entitled to judgment as a matter of law.

In sustaining the motion the trial court recognized plaintiff's theory of recovery as being defendants' failure to furnish plaintiff a safe place to work and safe tools with which to work, a horse being a tool used in cattle ranching. It found that plaintiff was experi-

enced in riding horses in connection with the cattle business; that plaintiff knew Oakie was not properly shod but he preferred to use Oakie for this particular work when other horses were available and continued to use Oakie with knowledge of the risk occasioned by want of proper shoeing; that plaintiff knew as much about horses as did defendants and knew the condition of Oakie's feet at the time in question and the risk and danger involved; further there were no material facts in dispute and plaintiff assumed the risk of the defects complained of.

On appeal the question is whether the trial court erred in granting summary judgment for defendants under K. S. A. 60-256 (c). Generally before summary judgment may be granted, the record before the court must show conclusively that there remains no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case. The manifest purpose of summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. A court, in making its determination, must give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration (*Sly v. Board of Education,* 213 Kan. 415, 516 P. 2d 895).

This court has adopted strict standards governing the propriety of summary judgment in negligence actions. See, *e. g., Smithson, Executor v. Dunham,* 201 Kan. 455, 441 P. 2d 823. Generally the rule which has evolved is that an issue of liability in a negligence action may be decided as a matter of law only when it can be said that reasonable persons cannot reach differing conclusions upon the same evidence. See *Vaughn v. Murray,* 214 Kan. 456, 459, 521 P. 2d 262, 267. In the present case the issue is whether it can be said reasonable persons could not differ from the trial court's factual determination that plaintiff assumed the risk of falling and consequent injury when he rode the unshod horse at the time in question.

Plaintiff-appellant asserts a fact question remained unresolved

on the issue of his full appreciation of the risk involved in doing that which he did. Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee (*Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765). Assumption of risk generally bars recovery by an employee who knows of the danger in a situation but nevertheless voluntarily exposes himself to that danger. In *Kleppe v. Prawl,* 181 Kan. 590, 313 P. 2d 227, 63 A. L. R. 2d 175, we said:

". . . [A]ssumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid; it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs." (p. 594.)

It should be noted the knowledge and appreciation of the risk involved is to be judged by a subjective standard, by knowledge attributable to the individual plaintiff and his situation (Prosser, Law of Torts, 4th ed., 1971, § 68, p. 447).

Appellant's testimony strongly belies his contention he did not fully apprehend the risks involved in riding an unshod horse. He had a specialized knowledge of riding cattle ponies, extending over a period of years, and their propensity to fall under certain conditions. He had taken care of many horses and their grooming. He specifically acknowledged Oakie did precisely what he knew Oakie was apt to do with long, unshod hooves and that the result was something he knew was a risk of riding a horse under those circumstances. His complaint to Mrs. Price was, "We better get that horse shod, he is going to fall". He acknowledged there is a normal risk of a horse stumbling with a rider in a pasture which danger is enhanced when the horse's hooves are long and unshod. He was riding Oakie nearly every day and his knowledge of Oakie's condition appears to have been equal to, if not greater than, that of appellees. Under appellant's own statements it simply cannot be said a question of fact remained regarding his knowledge and appreciation of the risk raised from riding Oakie.

Appellant also urges a question of fact remained unresolved as to whether defendant-appellees ordered him into a dangerous situation. He further argues the assumption of risk doctrine was not available to appellees as they had promised to remedy the defect after appellant had complained of it. The two contentions are interrelated. First of all, it may be noted that appellant was not directed or ordered to use Oakie in the task at hand as contended. He was simply told to herd certain cattle back to the barn. The choice of horses to be used was his. As found by the trial court from the undisputed facts before it there were other horses available for appellant's use. The matter of the location and suitability of other horses on the ranch which appellant could have used was gone into in considerable detail in appellant's deposition. He had a pickup truck with which to drive to the various locations where horses were available. Although appellant advanced certain reasons why the other horses were not as attractive for use as Oakie on the particular occasion, the matter was summed up in this fashion in his testimony:

"Q. For your job is it a fair statement that there were several different horses available you could use if you wanted to?
"A. Yes."

Appellant was not directed or required to use any particular horse so it can scarcely be maintained there was a disputed factual issue whether he was ordered into a situation of danger. He was fully aware of the situation and the means at hand with which to do the requested work and he voluntarily chose to use the horse Oakie when others were available.

A more serious question is presented in appellant's contention the assumption of risk defense was not available to appellees because they had promised to remedy the defect after being advised of the defect by appellant. Appellant relies on the rule stated in *Hernandez v. Bachand,* 199 Kan. 82, 427 P. 2d 473, as follows:

". . . [T]here is an exception to the general rule of the assumption of risk in those cases where an employee, after complaint has been made of a defective or dangerous condition, is induced to continue his service for a reasonable time by reason of his employer's promise to remedy the defect. [Citations.] The application of this exception to the rule presupposes that the employee has complained of the dangerous condition to his employer; that the employer has promised to remedy the dangerous condition; and that the employee has thereafter continued his service for a reasonable time in reliance upon the employer's promise." (p. 86.)

See, also, Prosser, *supra,* § 68, pp. 450-451.

Thus there are three requisites which bring the exception into play. Assuming appellant's evidence supplies the first two, a complaint and a promise to remedy the dangerous condition, what about the third—that appellant was induced to continue in service for a reasonable time in reliance upon appellees' promise? This essential seems not to have been established—in fact appellant's admissions negative the entire notion. Appellant never testified he was induced to remain in appellees' employ because of their assurance Oakie's feet would be shod nor did he testify he used Oakie only upon the promise that he was going to be shod. The conclusion is inescapable appellant gave little if any consideration to safety hazards or requirements. His interest lay in the ease with which he could bring the cattle into the barn. He specifically testified other horses were available which he could have used. The preference for Oakie was his own. Oakie was not shod the next day after the complaint as promised. Appellant twice called the matter to Mrs. Price's attention thereafter without receiving any verbal acknowledgement of his complaints and yet he continued to use Oakie daily. It can scarcely be said he was induced to remain in service for a reasonable time in reliance on any promise to repair.

This court has always recognized a close kinship of the assumption of risk doctrine to that of contributory negligence but more recently, because attempts to harmonize or differentiate them have sometimes resulted in confusion, has confined the former to controversies involving the master-servant relationship. See *Smith v. Blakey, Administrator*, 213 Kan. 91, 101, 515 P. 2d 1062. We have no case expressly holding that the exception to the assumption of risk doctrine described above in *Hernandez* is inapplicable where reasonable alternative tools or instrumentalities were available for an employee's use, yet that rule seems implicit in the element of continuance of service in reliance upon the employer's promise. No rule is to be uncritically applied to reach an illogical result under the particular circumstances. Long ago, in *U. P. Rly. Co. v. Estes*, 37 Kan. 715, 16 Pac. 131, this court held that if an employee voluntarily places himself in a dangerous position unnecessarily when there is a safer place he could have selected, and injury occurs to him by reason of his choice, he is held to be contributorily negligent and cannot recover for such injury. Other cases which have followed the rule in *Estes* are *Railroad Co. v. Tindall*, 57 Kan. 719, 48 Pac. 12; *Carrier v. Railway Co.*, 61 Kan. 447, 59 Pac. 1075; and *Stevens v. Allis-Chalmers Mfg. Co.*, 151 Kan. 638, 100 P. 2d 723.

From all the foregoing we conclude the exception to the assumption of risk rule as stated in *Hernandez* is not applicable where reasonably safe alternative instrumentalities or methods of work are available for an employee's use and we so hold. Here there were alternative horses which appellant might have used with a reasonable expectation of safety and the rule relied upon for recovery is not applicable.

The record before the trial court revealed no genuine issue as to any material fact in the case and it correctly entered summary judgment. That action is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.

OWSLEY, J., dissenting: The opinion for the court recognizes the assumption of risk defense is not available when the injured employee continues in his employment for a reasonable time in reliance upon the employer's promise to remedy a dangerous condition. This rule is stated in *Hernandez v. Bachand*, 199 Kan. 82, 427 P. 2d 473. The opinion points out the record does not disclose the appellant was induced to continue in service for a reasonable time in reliance on the employer's promise. It further states this essential was not established and the appellant's admissions negative the entire notion. The deposition of the appellant fails to disclose he was ever asked if he continued in service in reliance upon the employer's promise. The conclusion reached in the opinion depends upon inferences drawn from other testimony. It is well settled that in determining whether a motion for summary judgment should be allowed, the benefit of all inferences that may be drawn from the facts under consideration must be given to the party against whom summary judgment is sought. (*Sly v. Board of Education*, 213 Kan. 415, 516 P. 2d 895.) The effect of this opinion is to place the burden of proof upon the employee to show by way of discovery that he is entitled to recover. The appellant's only burden is to show that factual issues exist.

It is my opinion that summary judgment should not be granted in this case. This court, as well as many of our trial courts, too often determines factual issues by way of summary judgment in its desire to dispose of litigation.