## THE PULLMAN COMPANY v. FINLEY.
### (No. 691.)

PLEADING — AMENDMENT — DISCRETION OF COURT — CONTINUANCE—
NEW ISSUES—MOTIONS—JUDGMENT ON PLEADINGS—NEGLIGENCE—
CONTRIBUTORY NEGLIGENCE—PLEADING — EVIDENCE—NONEXPERTS—
OPINION—WITNESSES — CROSS-EXAMINATION—TRIAL—SPECIAL IN-
TERROGATORIES—APPEAL AND ERROR—PREJUDICIAL ERROR—CARRIERS
—SLEEPING CAR COMPANIES—NEGLIGENCE—SICK PASSENGER—VER-
DICT, IMPEACHMENT OF—NEW TRIAL—MISCONDUCT OF COUNSEL—
INSTRUCTIONS.

1. The granting of leave to file an amended petition, upon
   plaintiff's application made three days before the agreed
   date for trial, and requiring the defendant to file an answer
   thereto the next day after the leave was granted and the
   amended petition filed, was within the sound discretion of
   the trial court.

2. In an action charging negligence for failing to assist a passen-
   ger to alight during the stopping of a train at her destina-
   tion, and carrying her past her destination to another sta-
   tion, the original and amended petition alleged that plain-
   tiff was ill and with her nurse was received by defendant
   sleeping car company on its car attached to a passenger
   train, that plaintiff was required to be carried into the car
   and required assistance to alight, to defendant's knowledge,
   that assistance to alight was not provided, but defendant
   carried her beyond her destination to another station, there
   transferred to a baggage car of a train and returned to her
   place of destination, to her injury and damage. The
   amended petition further alleged that defendant's conduc-
   tor, before the arrival of the train at plaintiff's destination,
   expressly promised to see that plaintiff was carried off the
   car, and requested her to remain in the car until he sent
   the porter to carry her off. Held, that defendant's obliga-
   tion as to plaintiff's alighting from the car was as broad as
   her necessities, and ended only on her being safely carried
   from the car at her destination, and hence the alleged
   promise of the conductor neither lessened nor increased the
   defendant's obligation, and the allegation as to such promise
   was not new matter entitling the defendant to a continuance.

3. The rule that when contributory negligence is pleaded, it con-
   stitutes an affirmative defense, and must be controverted by
   a reply, notwithstanding that plaintiff's negligence is nega-

tived in the petition, comprehends only such matter as is shown by the allegations to have contributed to and constituted a part of the proximate cause of the injury complained of.

4. In an action against a sleeping car company for failing to see that plaintiff, who was ill, was carried out of the car at her destination, the defendant alleged that plaintiff's failure to alight, and any injuries she received thereby, were due to her own negligence in failing to properly arrange for her reception and assistance at her destination; she being on her way to a hospital. *Held* that, assuming that it was plaintiff's duty as a wise precaution to make necessary and proper arrangements for her reception and assistance upon her arrival, that did not relieve the company from the performance of its duty to her as a common carrier to see her safely disembarked at her destination.

5. In an action against a sleeping car company for failing to see that plaintiff was carried off the car at her destination and carrying her past her destination to another station; she being ill at the time and on her way to a hospital accompanied by a professional nurse, where the nurse testified as to plaintiff's condition from personal observation of what actually occurred at the time she was carried beyond her destination, a question calling for the statement of such witness as to what plaintiff's condition was when she arrived at the station to which she was carried, and how long it would have been before she would have been in a condition to be operated on, had she been taken out of the car at her destination, was not objectionable as calling for an expert opinion from a nonexpert witness; the question in connection with the other facts within the knowledge of the witness being stripped of its hypothetical character.

6. Where the porter of the sleeping car company testified in its behalf, it was not improper for the plaintiff on cross-examination to prove by him that he received from the defendant $25 a month and had to board himself, as bearing upon the weight of his testimony as a whole.

7. Since the instructions in an action against a sleeping car company for carrying a sick passenger beyond her destination clearly charged the jury that the defendant would be liable for damages only in case that it was found to have been guilty of negligence, which was the sole proximate cause of the injury, the defendant was not prejudiced by the erroneous admission of a conversation between the train

conductor and plaintiff's nurse in which the conductor stated that the sleeping car company, and not the railroad company, was responsible for the damage to the plaintiff.

8. Where special interrogatories are submitted to the jury to be answered when returning a verdict, answering a question covering a material point and upon which evidence exists by stating "We don't know" is equivalent to a special finding against the party having the burden of proof upon the issues submitted.

9. A failure of proof by the party upon whom the burden of proof rests must accrue to the benefit of the party who negatives the issue.

10. Where a sick person on her way to a hospital was accepted by a sleeping car company as a passenger, it was the duty of the servants of the company to see that said passenger was properly taken from the car at her destination, and hence special findings of the jury in answer to interrogatories that plaintiff failed to make proper arrangements for her assistance at destination did not affect the company's duty, and such findings were insufficient to overcome a general verdict in plaintiff's favor.

11. The conductor of a sleeping car in the employ of a sleeping car company cannot bind the company in the matter of telegraphing for a passenger to friends for assistance upon arrival at destination, it not being shown that such telegraphing was within the scope of the conductor's agency or employment, and it not appearing that the company was obligated by its contract to furnish assistance, telegraph for, or to procure friends to meet the passenger; and hence in an action for the failure of the company to see that the passenger was taken from the car at her destination, she being sick at the time and on her way to a hospital, the effect of evidence that the conductor of the car promised to telegraph to plaintiff's friends to meet her with an ambulance upon her arrival at destination was to make the conductor plaintiff's agent, and did not affect the duty or responsibility of the company.

12. Such evidence, though undisputed, did not tend to show a waiver by the plaintiff of the primary duty of the sleeping car company to assist her from the car to the depot at her destination, and hence the failure of the jury to specifically answer special interrogatories as to whether the conductor had agreed with the plaintiff to telegraph to her friends for assistance, and had so telegraphed, would not defeat re-

covery by the plaintiff against the company for failure. on the part of the latter to perform a duty which it owed to her.

13. Where the defendant sleeping car company accepted plaintiff when ill as a passenger on her way to a hospital, and, failing to assist her to alight at destination, carried her past such destination to her injury, the failure of the company to notify the train conductor of plaintiff's condition and the necessity of assisting her from the car and train was evidence of negligence for which the company was liable.

14. In the absence of a statute permitting misconduct of a jury to be shown by the affidavit of a juror, such an affidavit filed in support of a motion for new trial is not competent proof that the amount of a verdict was reached by the quotient method, and hence not sufficient to show that an improper method was used in reaching the verdict.

15. In an action against a sleeping car company for carrying a sick passenger past her destination and failing to assist her from the car at her destination, plaintiff's counsel, after the evidence was closed, brought into court certain suit cases belonging to the plaintiff, that their color might be observed, and, on objection, stated that they were brought in solely because counsel for defendant had requested that it be done, and then offered to prove that they were the suit cases referred to in plaintiff's testimony. Defendant's counsel again objected and excepted to the act and statement of counsel as misconduct, and the court stated, "The suit cases are not in evidence and will not be considered by the jury." *Held* that, plaintiff's counsel had a right to state his reasons and to show that he intended no misconduct, and that upon the record the defendant could not urge prejudicial misconduct in the production of the suit cases for inspection or the offer to prove that they were the same suit cases referred to in the evidence, and, further, that the prejudice, if any, which might have arisen from bringing the suit cases into court was removed by the direction of the court to the jury to disregard them.

16. If the court, when requested, fails or refuses to interfere and administer the proper rebuke or correction when counsel is pursuing an improper or prejudicial line of argument, such failure or refusal may be a ground for new trial, but, to require a new trial, it must affirmatively appear from the record that there has been an abuse of the court's discretion in that respect, since whether counsel should be checked or

cautioned is one resting largely in the sound discretion of
the trial court.

17. Upon objection being made to statements made in argument
by opposing counsel the court stated that the jury will de-
cide the case on the evidence and not on the remarks of
counsel, and again, that the jury shall not take into consid-
eration anything outside of the evidence. *Held,* that the ef-
fect of the language used by the court was to exclude the
remarks of counsel objected to, and to convey to the minds
of the jury that they were limited in considering the case
to the evidence.

18. In an action against the sleeping car company for failing to
assist the plaintiff, who was ill, to alight from the car at
her destination, and carrying her past her destination to
another station to her injury, plaintiff's counsel was not
guilty of misconduct in commenting in argument on the
reason for the payment for sleeping car accommodations,
and denouncing the price exacted as exorbitant.

19. Where special interrogatories were submitted to a jury at
the request of counsel for the defendant, and plaintiff's
counsel in argument referred to them and stated that it
would be well for the jury to go over the instructions of
the court thoroughly and then study the questions thorough-
ly "because they catch," *Held,* that counsel's comment
upon the interrogatories was not to be understood as in-
tending that the jury should answer them so as to harmon-
ize with their general verdict regardless of the evidence,
but that they should so answer the questions upon the evi-
dence that there should be no conflict between their answers
and their general verdict, and that the words of the com-
ment "because they catch," were not intended as a reflec-
tion upon the court, but to arouse the jury to the necessity
for care in order to preserve their verdict, and hence that
the comment of counsel was not misconduct requiring the
granting of a new trial.

20. In an action against a sleeping car company for carrying a
sick passenger past her destination, owing to the failure of
the company's servants to assist the passenger to alight at
her proper destination, the court stated in an instruction
that it was not denied that the plaintiff did suffer incon-
venience, distress, anguish of mind, pain, delay, and expense
by being carried past her destination, but, before a verdict
can be rendered in her favor it must be found that those
matters were directly attributable to some neglect or wrong-

ful act on the part of the defendant company, its agents or employes. *Held,* referring to the evidence, that the denial thereby of the inconvenience, distress &c., of the plaintiff was so slight that it would not warrant the appellate court in holding the court's statement in said instruction to be erroneous and prejudicial, the court being of the opinion from an examination of the entire charge that it fairly stated the law of the case to the jury.

[Decided July 1, 1912.]        (125 Pac. 380.)

ERROR to the District Court, Sheridan County; HON. CARROLL H. PARMELEE, Judge.

The action was brought by Anna Finley against the Pullman Company to recover damages alleged to have been sustained by the plaintiff through the negligence of the defendant in failing to see that she was properly carried from the defendant's sleeping car at her destination, and carrying her past said destination to another station. Verdict and judgment was for the plaintiff and the defendant brought error. The material facts are stated in the opinion.

*Charles W. Burdick* and *Burgess & Kutcher,* for plaintiff in error.

The plaintiff was erroneously permitted to file her amended petition, raising new issues and presenting new matter, within three days of the date set for trial by agreement of the parties, and it was also error to deny the application of defendant for a continuance to give the defendant time to properly prepare for and defend against the new issues and matters thus raised. (Donley v. Scanlon, (Ind.) 17 N. E. 158; Gurr v. Carter, (Ga.) 58 S. E. 488; Ry Co. v. Stocking, (Miss.) 10 So. 480; Ry. Co. v. Smith, (Tex.) 29 S. W. 186; Laundry Co. v. Employers &c., (Minn.) 117 N. W. 506; Ry. Co. v. Power, (Ark.) 53 S. W. 572.)

Under the pleadings defendant was entitled to judgment, and its motion therefor was improperly denied, since no reply was filed by the plaintiff answering or denying the allegation in the second defense of the answer that the plaintiff's failure to disembark from the car at her destina-

tion was not due to any fault of the defendant, but to the fault and negligence of the plaintiff in failing to properly arrange for her reception and assistance upon her arrival at her destination. Since contributory negligence is a defense to be affirmatively alleged, when alleged in the answer the plaintiff must reply denying the same, or it must be taken as true for the purpose of the action, even though the petition may contain averments expressly negativing negligence on plaintiff's part. (Ry. Co. v. Cook, (Wyo.) 102 Pac. 657; Hudson v. Ry. Co., (Mo.) 14 S. W. 15; State v. District Court, (Mont.) 79 Pac. 546; Louisville &c. Co. v. Copas, (Ky.) 26 S. W. 179; Ry. Co. v. Wall, (Ky.) 51 S. W. 168; Brooks v. Louisville &c. Co., (Ky.) 71 S. W. 507; Louisville &c. Co. v. Paynter, (Ky.) 82 S. W. 412; Smith v. Louisville &c. Co., (Ky.) 112 S. W. 874.) The allegation of negligence in general terms is sufficient, in the absence of a motion to make more definite and certain. (Brown v. Ry. Co., (Wash.) 47 Pac. 890; C. B. & Q. R. Co. v. Oyster, (Neb.) 78 N. W. 359; Ry. Co. v. Smith, (Ky.) 39 S. W. 832; Neier v. Ry. Co., (Mo.) 1 S. W. 387; Stewart v. Ry. Co., (Tex.) 78 S. W. 979; Borden v. Falk Co., (Mo.) 71 S. W. 478; Conrad v. De Montcourt, (Mo.) 49 S. W. 805.)

The testimony of the nurse who accompanied plaintiff on her journey to the effect that if she had not been carried past her destination she would have been in a condition to be operated on in a week after her arrival, was erroneously admitted, since the witness was not qualified to testify as an expert upon the subject. (Dashiell v. Griffith, (Md.) 35 Atl. 1094; People v. Rice, (N. Y.) 54 N. E. 48.) The cross-examination of the witness who was porter on defendant's car, as to the wages which he received was improper and the objections thereto should have been sustained. The admission of the testimony was most prejudicial. It was also error and prejudicial to permit the plaintiff to testify as to a conversation between the train conductor and the plaintiff's nurse to the effect that this defendant would have to pay the damage. Proof of statements made by bystand-

ers, after the accident, commenting upon the occurrence, or expressing opinions, are inadmissible. (Thompson on Neg., secs. 7731, 7733; 17 Cyc., 219; Felska v. R. Co., (N. Y.) 46 N. E. 613; Sullivan v. Seattle E. L. Co., (Wash.) 97 Pac. 1109; Hughes v. R. Co., (Ky.) 48 S. W. 671; Dwalt v. Ry. Co., (Tex.) 55 S. W. 534; Murray v. R. Co., 16 Utah, 356; 52 Pac. 596; Kaelin v. Comm., (Ky.) 1 S. W. 594; Allen v. State, (Ala.) 20 So. 490; State v. Ramsey, (La.) 20 So. 904.)

· It was error to give an instruction which assumed the existence of material facts in issue. (11 Ency. Pl. & Pr. 116, 123; Ry. Co. v. Shelton, 66 Ill. 424; Allen v. Coal Co., (Mont.) 11 Pac. 673.) The instruction invaded the province of the jury, which stated that the suffering by plaintiff of inconvenience, distress, pain, expense, &c., was not denied. The matter was in issue, and to some extent was denied by a witness for the defendant. The error in assuming material facts is not cured, even though there is no conflict in the evidence, as there might be a question as to the weight and credit to be given the testimony. (11 Ency. Pl. & Pr. 135.)

A verdict contrary to, or in disregard of, evidence which was not improbable or inconsistent, and does not contradict it or discredit it will be set aside. (29 Cyc., 830b.) While the jury may reasonably judge as to the credibility of the witness, yet if the conclusion of the jury appears to have been arbitrary or capricious, or the jury plainly disregarded the uncontradicted testimony of a witness who was not impeached or discredited, even though a party to the action, a new trial will be granted. (29 Cyc., 830c.) Where facts found in a special finding are essential to a right of recovery, and such finding is not sustained by the evidence or is contrary thereto, a new trial should be granted. (29 Cyc., 836.) A verdict should be set aside where the jury has been unable to agree upon a special finding respecting a determinative fact. (29 Cyc., 836.) And where the findings on an important, though not decisive fact, are contrary to the evidence and show that the evidence was not considered fairly

and impartially there should be a new trial. (29 Cyc., 837.) Under the rules thus stated the answers of the jury to the special interrogatories in connection with their general verdict are such as to entitle the defendant to a new trial. This is particularly so as to the answer, "We don't know." (Darling v. West, (Ia.) 1 N. W. 531; Lytton v. Ry. Co., (Ia.) 28 N. W. 628; Wilson v. Ry. Co., (Mich.) 23 N. W. 627; Norfolk B. S. Co. v. Koch, (Neb.) 71 N. W. 1015; Ry. Co. v. McGraw, (Colo.) 45 Pac. 383.) It is evident that although the jury attempted to square their answers to their interrogatories with their verdict, they exposed by their answers the unfair and illegal manner in which the general verdict was reached. The verdict and judgment are not supported by the special findings of the jury. The answer "We don't know" is equivalent to a special finding in favor of the defendant upon the question submitted. (Ry. Co. v. Swarts, (Kan.) 48 Pac. 953; Kalina v. Ry. Co., (Kan.) 76 Pac. 438; Ry. Co. v. Peavy, (Kan.) 8 Pac. 780; Bank v. Barnes, (Mich.) 49 N. W. 475; Flannery v. R. Co., 23 Mo. App. 120.)

The verdict is not sustained by the evidence. Plaintiff's right of action is predicated upon defendant's alleged negligence in carrying her past her destination. What occurred at the station to which she was carried and during her return concerns only the question of damages suffered by her as a consequence of being taken beyond her destination, and does not affect the question of defendant's liability for not assisting her from the train at her proper destination. Plaintiff's whole case rests upon the alleged duty of the defendant to assist her from the train, and its violation of such duty. The evidence discloses that the defendant's conductor and porter were willing to assist her from the train, but failed to do so only because there was no stretcher or other suitable means at the station with which to take her from the car. The plaintiff should have made proper arrangements to have those necessary things at the station upon her arrival. It appears that defendant's employes did all that they could

under the circumstances, and in view of the undisputed facts, even though the conductor may have told the plaintiff to remain in the car until the porter came for her does not show that the conductor and porter were guilty of negligence. The conductor had a right to suppose that all arrangements were complete and that the ambulance and plaintiff's friends would appear upon the arrival of the train to assist in response to her telegram which she had told the conductor she had sent from Sheridan.

At any rate, when the train arrived the first and proper thing for the conductor to do was discharge the other passengers to get them out of the way in order that plaintiff might be handled safely and without danger. Having done so, then upon the starting of the train his signal to stop was disregarded by the train conductor, and it is clear that the plaintiff was carried past her destination without any fault of the defendant or its employes. The whole trouble was caused by the failure of plaintiff's friends to arrive at the depot and the delay of the ambulance. That was not a fault of the defendant.

There was gross misconduct on the part of counsel for plaintiff which should result in a new trial. (29 Cyc., 777, 778; Ashland &c. Co. v. May, (Neb.) 71 N, W. 67; Grant v. Varney, (Colo.) 40 Pac. 77; Truel v. Ry. Co., 128 S. W. 223; 2 Ency. Pl. & Pr. 745; Ry. Co. v. Cooper, (Tex.) 8 S. W. 68; Sullivan v. Ry. Co., (Ia.) 93 N. W. 367; R. Co. v. Johnson, (Ill.) 4 N. E. 381; 29 Cyc., 774; R. R. Co. v. Kellog, (Neb.) 74 N. W. 454; Ry. Co. v. Rehm, (Tex.) 82 S. W. 526; Dillingham v. Scales, (Tex.) 14 S. W. 566; Florence &c. Co. v. Field, (Ala.) 16 So. 538; Bullard v. R. Co., (N. H.) 5 Atl. 838; Fruchy v. Eagleson, (Ind.) 44 N. E. 146; White v. Ry. Co., (Ia.) 124 N. W. 309.)

The jury fixed the amount of plaintiff's recovery by means of an agreement whereby each juror set down the amount of recovery and the amount so set down divided by 12, and the result or quotient was taken as the amount of recovery. This

is shown by the affidavits of two jurors. Thus the measure of the compensation allowed was not fixed by the calm deliberation and discussion of the jury, nor was it the result of twelve jurymen, but was the result of chance. It makes no difference that after the method was agreed upon and the amount determined in pursuance of the agreement the jury went through the formality of ratifying the amount arrived at. The amount arrived at by this method was illegal because the jury agreed to resort to it, and fix the amount in pursuance of it. That misconduct is sufficient to cause a reversal of the judgment.

*J. L. Stotts* and *H. S. Ridgely,* for defendant in error.

The amended petition raised no new matter that could not have been properly proven under the original petition. The court took that view, and no error was committed in permitting the amended petition to be filed at the time it was filed.

A sleeping car company is a passenger carrier and liable as such, notwithstanding that the main compensation for the transportation of the passenger was received by the company operating the train. (5 Am. St. Rep. 31; 21 Am. St. 169; 3 Thompson on Neg., 621.) The carrying of plaintiff beyond her destination was inexcusable negligence. (63 L. R. A. 70.) A carrier is bound to render reasonable assistance to a passenger when the inability of the passenger to take care of himself is known to the carrier. (58 S. E. 963.) Having voluntarily accepted the plaintiff as a passenger, the special care necessary for her protection was imposed upon the defendant, and the failure to bestow such care constituted negligence. (2 White on Per. Inj. on Railroads, pp. 587, 899-900; Homer v. So. Ry., 58 S. E. 963; 53 N. W. 1128; 115 N. W. 733; 43 So. 576.) The absence of any stretcher or any means of assistance at the depot could not change the situation as to defendant's liability. However, the proper assistance was there. The ambulance was there at 7:30, and the train left at that time. The invalid chair was at the car before the train started. No sufficient excuse

was shown for the failure of the defendant to assist her from the car at the time the station porter arrived at the car with the invalid chair.

No reply was necessary to the allegation of plaintiff's negligence in defendant's answer. The law required the defendant to provide all necessary arrangements and assistance at the station for the reception of its passengers, and all assistance necessary that they might properly and conveniently disembark from the cars. The allegations of plaintiff's petition negativing negligence on her part and charging negligence on the part of defendant may be regarded as a reply to defendant's allegation of contributory negligence if a reply should be held to be necessary. The instructions were all proper in connection with the evidence.

The objections made to the answers of the jury are without foundation in law or in fact. The jury was justified in answering the 6th interrogatory "We don't know," for the jury could not know what the conductor and porter were willing to do. Upon the facts as to the method of reaching the amount of recovery agreed upon the verdict was not invalid. After the amount was found by a division of the amount written down by each juror, a vote was taken upon the amount thus reached, resulting in an agreement that it should be returned as the amount of recovery. This is not an invalid or improper method, and we believe no decision can be found reversing a judgment on a showing of that kind.

SCOTT, JUSTICE.

The defendant in error, plaintiff below, recovered judgment against the plaintiff in error, defendant below, for damages for alleged injuries and brings error.

1. The original petition was filed on August 6, 1910, alleging the injuries to have been sustained on June 3, 1910, in consequence of the negligence of the defendant as she alleges in carrying her past her destination while traveling on said date in defendant's car from Billings, Montana, to Minneapolis, Minnesota. On January 6, 1911, the defendant

filed its answer in which as a first defense after admitting its corporate business, it denied each and every other allegation set forth in plaintiff's petition, and as a second defense the defendant alleged contributory negligence on the part of the plaintiff. On February 7th following by agreement of the parties the court set the case for trial on February 23, 1911, at 10 o'clock a. m. On February 20th, the plaintiff made application to and was permitted by the court over defendant's objection to file an amended petition and to which the defendant was required to file its answer thereto on or before February 21 at 2 o'clock p. m. The allowance of the amendment was within the sound discretion of the court. It was followed by a motion for a continuance supported by affidavit that the defendant had prepared his defense on the issues made by the original pleadings, that the witnesses were non-residents and it is contended that the amended petition changed the original cause of action and required evidence, if obtainable at all, from witnesses who resided in Minnesota, and whose presence could not be obtained or depositions could not be taken in time for the trial. The issues presented by the original and the amended petition were to the effect that the plaintiff was ill and that she and her nurse were received by the company on its car attached to the Northern Pacific passenger train at Billings, Montana, as prepaid passengers from thence to Minneapolis, Minnesota, on June 2, 1910, and arrived at Minneapolis on the next day. That she was so ill as to necessitate her being carried into the Pullman car at Billings and required assistance to get off the car at her destination, all of which was known to the company and its employees. That such assistance was not provided, but that the company and its employees failed to furnish such assistance and carried her to St. Paul, 10 miles beyond her destination, there transferred her to the baggage car of a train going from St. Paul back to Minneapolis.

It is contended that the amended petition contained new and additional allegations not contained in the original peti-

tion to the effect that before the arrival of the train the Pull-man car conductor, upon request of plaintiff, expressly .promised to see that plaintiff was carried off said car, and requested the plaintiff to remain in the drawing room of the. car until he sent the porter to carry her off. The latter allegation, it is contended, was such new matter as entitled· the defendant to a continuance. We do not think so. The obligation and duties assumed by the defendant with reference to her alighting from the car were as broad as the. necessities of the plaintiff required, and ended only upon her safe alighting from the car at her destination. The obligation so assumed was not in any wise lessened or increased by the fact alleged. The denial of the application for a continuance is not shown to have deprived the defend·ant of any evidence to which it was entitled and the con-.ductor was present and testified at the trial. It is urged that the defendant should have been granted additional time to ascertain if there were passengers who overheard the con-versation, as to which there was some conflict in the testimony, between the conductor and the plaintiff, and if so to· obtain their evidence. Considerable time has elapsed since the trial of the case and no motion for a new trial on the ground of newly discovered evidence has been made. We see no prejudicial error in overruling the motion for a continuance.

2. It is urged that the court erred in denying defendant's motion for judgment on the pleadings. It is contended ·that inasmuch as there was no reply the plea of contributory negligence, as pleaded in the answer, stands confessed and for that reason the judgment should be reversed. It was alleged in the petition that all the matters complained of were caused by the negligence and carelessness of the defendant, its agents and servants and without any fault or negligence of the plaintiff. In the second defense it is· pleaded that plaintiff's failure to disembark from defend-ant's car at Minneapolis on the 3rd day of June, 1910, as alleged in her petition, and any injury suffered by her in·

consequence thereof, if any injury was suffered, as she al-
leges, was not due to any fault or negligence of this defend-
ant, but was due to the fault or negligence of the plaintiff
in failing and neglecting to make proper and necessary ar-
rangements for her reception and assistance at Minneapolis
upon her arrival at said destination. The allegations of the
petition, if true, established the relation of carrier and pass-
enger from the time she was received on the defendant's car
at Billings, Montana, (6 Cyc., 538, 541) and the duties and
obligations of the defendant as such carrier to the plaintiff
did not end until she safely disembarked at her destination.
Assuming that it was her duty as a wise precaution to make
proper and necessary arrangements for her reception and
assistance at Minneapolis upon her arrival, that did not re-
lieve the company from the performance of its duty to her
as a common carrier, which was to see her safely disem-
barked at her destination. Had she safely disembarked
from the car the company's duty would have then ceased,
but not before, and the company could not escape liability
for a failure to perform this duty by reason of her failure
to have her friends meet her with proper conveyances to
properly take care of her after the company had performed
its duty. Her failure or neglect so to do was not a contribu-
tory factor in the company's wrongful act in carrying her
beyond her destination. Had her friends been there to meet
her the primary duty would have still rested upon the com-
pany to have lifted and safely carried her from the car to a
place which, under the circumstances, was reasonably safe.
The question as one of pleading does not come within the
rule that when contributory negligence is pleaded it con-
stitutes an affirmative defense and must be controverted by
a reply, notwithstanding that negligence of the plaintiff is
negatived in the petition (C. B. & Q. R. R. Co. v. Cook, 18
Wyo. 43, 102 Pac. 657) for that rule comprehends only
such matter as is shown by the allegations to have con-
tributed to and constituted a part of the proximate cause of

the injury complained of.  We think there was no error in denying the motion for judgment on the pleadings.

3. The nurse who accompanied the plaintiff on her journey was called as a witness and testified in her behalf. After testifying that she had been a professional nurse for two years; that plaintiff was afflicted with peritonitis and was on her way to a hospital at Minneapolis for surgical treatment she was asked and permitted to answer the following questions, viz: "Q. How long was this operation deferred?  I will ask you what was her condition when she arrived at St. Paul?  You say her condition when she arrived at St. Paul was about the same as it was when she was operated on?  How long was it—how long would it have been if she had been taken out of the car when she first arrived there—how long would it have been before she would have been in a condition to be operated on—that is, be in the condition she was in?  The defendant objects to the question for the reason that it calls for an expert opinion and this witness is not qualified to testify as an expert upon such matters; objection overruled: defendant excepts.  A. About a week."  It appears from the evidence that more than four weeks elapsed after her arrival at Minneapolis before the operation was performed.  It was material upon the issue for the plaintiff to show the injury, if any, resulting from the alleged negligence of the defendant and the damage resulting therefrom.  Her apparent condition upon her first arrival at Minneapolis as compared with what it was upon her second arrival at that place needed no expert testimony. The witness had testified to this, and in order to properly understand the question, the meaning of which is somewhat obscured, other testimony given by her should be considered. She testified with reference to her answer to the question as follows: "Q. What do you judge this from?  From that she was in when she first arrived, and the condition she was in when she was operated on?  A. Yes, I judge from that." "Q. What was her condition at the time she was operated upon compared with her condition when she first arrived at

Minneapolis? A. It was just about the same, except from the fact that she was somewhat fatigued from her trip. Q. What was her condition when she arrived back from Minneapolis—from St. Paul compared with the time she first left Minneapolis going to St. Paul? A. The second time she reached Minneapolis? Q. Yes? A. Her condition was very much worse. Q. How much did that worse—how long did that worse condition last, continue? A. About four weeks. Q. Up to about the time she was operated on? A. Well, up to about three or four days before she was operated upon." While the question propounded was, standing alone, objectionable, yet, in connection with other evidence as to facts within her knowledge, it was stripped of its hypothetical character. Her evidence was predicated not upon the assumption of proof of any particular fact, but upon her personal observation of what actually occurred and which came to her knowledge through the medium of her own senses. In speaking upon the subject of qualification of witnesses to testify upon a particular subject of testimony and as to whether the general or ordinary experience of a layman is sufficient, Dr. Wigmore says (Sec. 559, Wig. on Ev.) : "The witness is not the juror. He does not decide the issues; he merely furnishes a small contribution to the material for decision. He should not be required to qualify as if he were a final arbiter of facts." The learned author again says at sec. 568 id.: "When does the ordinary experience suffice? The key to the various questions that here arise seems to be this: While on matters strictly involving medical science, as such, some special skill is needed, yet there are numerous matters involving health and bodily soundness, upon which the experience of every-day life is entirely sufficient. The line may sometimes be difficult to draw; but there can be no difficulty in determining that a layman may be received to state (for example) that a person was or was not apparently ill. Great liberality should be shown by the courts in applying this principle, so that the cause of justice may not be obstructed by narrow and

finical rulings." If a layman may testify as to whether a person is at a particular time apparently ill, and we think he can, then we see no reason why he should not be permitted to state the apparent degree of illness of such person as compared with his or her state of usual health at or about that time. We are of the opinion that the question as asked, in view of other evidence given by her and which qualified her to answer it as a layman but not as an expert, was not prejudicial.

4. The court, over objection, permitted the plaintiff to cross-examine Joe Lewis, a witness who was called by and testified on behalf of the defendant, and who was shown to be in its employ, as follows, viz.: "Q. How much does the company pay you a month? The defendant objects as immaterial and not proper cross-examination; objection overruled and defendant excepts. A. Twenty-five dollars. Q. And do they board you or do you board yourself? The defendant objects as immaterial and not proper cross-examination; objection overruled; defendant excepts. A. I board myself. Q. At $25 per month? A. They give us a flat rate." It is contended that the court erred in permitting this cross-examination over defendant's objection. It is always proper within reasonable limits to permit a witness to be cross-examined as to his business relations with the party for whom he testifies as a witness. Such relation, when shown, may have a material bearing upon the weight to which the jury may give the witnesses' testimony as a whole. The evidence was competent and proper to be considered by the jury in weighing the testimony.

5. The plaintiff testified, among other things, to her trip from St. Paul back to Minneapolis. The court overruled defendant's objection to the following question propounded to her, viz.: "Q. Did you hear the conversation between him (meaning the conductor of the train) and your nurse, Miss Hubbard, wherein Miss Hubbard said the railroad company will have to pay for this damage, and he said, no, not the railroad company, that the Pullman company will have to

pay for this damage? The defendant objects as incompetent, irrelevant and immaterial. Objection overruled. Defendant excepts. A. Yes, I heard that conversation." This conversation was wholly immaterial to any issue in this case. The conductor of a Northern Pacific train could not bind the Pullman company by this admission. The instructions to the jury, however, made it clear to them that the Pullman company was liable for damages only in case that the jury found that the company was guilty of negligence and that such negligence was the sole proximate cause of the injury. We are unable to understand how upon the record the defendant could have been prejudiced by this evidence.

6. The jury found generally for the plaintiff and also answered special interrogatories submitted to it by the court. It is here urged that the special verdict or findings are inconsistent with the general verdict and that the court erred in denying defendant's motion for judgment on the findings. These assignments may be considered together.

By answers to the interrogatories the jury found the following facts, viz.: (1) That it was necessary to have a stretcher or some other suitable means in order to assist the plaintiff at Minneapolis. (2) At the time the train arrived at the station of Minneapolis there were no friends or other persons with means to assist the plaintiff. (3) The plaintiff informed the conductor on the trip that she had telegraphed friends to meet and assist her. (4) She endeavored to provide means and assistance to disembark before her arrival at Minneapolis. (5) The parties notified to meet and assist her appeared at the station in time to assist her. (6) The said parties so notified to assist her did not reach the train upon its arrival and offer assistance, but did so before the train left. To interrogatory No. 6 as to whether the conductor and porter of the defendant were willing to assist the plaintiff at Minneapolis if they had had suitable means with which to do so, the jury answered: "We don't know." The same answer was given by the jury to interrogatory No. 8 as to whether the plaintiff would have been carried past the station

if proper means with which to assist her had been provided at the train upon its arrival there. With regard to the answers so returned by the jury to interrogatories numbered 6 and 8 as above set forth, the rule, we think, is correctly stated by defendant in its brief as follows: "That where the question covers a material point, upon which evidence exists, such an answer as 'We don't know' is equivalent to a special finding in favor of the defendant upon the question." (Atchison &c. Ry. Co. v. Swarts, 58 Kan. 235, 48 Pac. 953; Kalina & Cizal v. U. P. Ry. Co., 69 Kan. 172, 76 Pac. 438; Kan. Pac. Ry. Co. v. Peavy, 34 Kan. 472, 8 Pac. 780; Medimess Bank of D. v. Barnes, 86 Mich. 632, 49 N. W. 475; Flannery v. R. R. Co., 23 Mo. App. 120.) It is but another way of stating the proposition that a failure of proof by him upon whom the burden of proof rests must accrue to the benefit of him who negatives the issue. Assuming the rule of law as stated to be correct, in applying it here the question first arises: Did these interrogatories relate to a material matter? The gravamen of the charge was the failure of the Pullman conductor and porter, employees of the defendant, to assist plaintiff from the train when she arrived at her destination. The obligations assumed by their principal did not end until she had safely disembarked from the car, and it was the duty of the company, by and through its employees, to assist her from the car to a place clear of trackage or passing trains, or, in other words, to the depot. The willingness of the conductor and porter to perform that duty was not sufficient. They did not do so. They had knowledge of her physical infirmity and it was utterly immaterial whether the conductor and porter were willing to assist the plaintiff or not. It was their duty to do so unless relieved therefrom by the act and conduct of the plaintiff and it was the failure to perform such duty that constituted the proximate cause of the injury to her health and resultant damages sustained thereby.

The Pullman conductor and porter were charged with and had knowledge of her illness from the time plaintiff was received on the car as a passenger at Billings, Montana, or

more than 24 hours before she reached her destination, and that she would require assistance to disembark at her destination. The plaintiff testified that before starting on her trip she sent a telegram to her friends in Minneapolis to meet her upon the arrival of the train. She was interrogated on direct examination, and answered as follows:

"Q. Now, do you recollect of any arrangement having been made for your reception at Minneapolis before you arrived there, any arrangement through the conductor, the Pullman conductor there? Were you present when any arrangements were made? A. Yes, he was in the drawing room all of the time that the arrangements were made, and we wanted to send telegrams to our friends, and we wanted to send telegrams to see about an ambulance being there, that an ambulance of our own would be there at our own request. And we wanted to pay for the telegrams, and he said: Q What did he say about that? A. He said he would send the telegrams, and when we offered to pay it he said the company would pay for it. Q. What did you say about your friends? Were they telegraphed to at that time. A. No, our friends were not telegraphed to at that time. He said he would just make the arrangements about the ambulance and that would be sufficient without anybody meeting us. Q. Without anybody meeting you? A. Yes, without anybody meeting us. Because we were not sure about anybody meeting us. We had telegraphed, but we had not received any reply. Q. Who did you telegraph to when you speak of telegraphing to friends? Were they ladies? A. Yes, sir. Q. How many? A. Two." This evidence was corroborated by the nurse in charge of the plaintiff who further testified that after such conversation the conductor informed her that the arrangements had been made and that she and her patient need not worry about it any further. The effect of this evidence was to make the conductor her agent. She and not the company was acting through him in the matter of obtaining an ambulance; nor could he bind his principal in the matter of telegraphing to her friends, for such telegraph-

ing is not shown to have been within the scope of his agency or employment, nor was the company obligated by its contract as a carrier to furnish an ambulance, or to procure her friends to meet her. This evidence, though practically undisputed, does not even tend to show a waiver by the plaintiff of the primary duty of the company to assist her out of and from the car to the depot at her destination. We are therefore of the opinion that the failure of the jury to specifically answer these questions, and even though such failure be construed as a special finding in favor of the defendant, yet it would not defeat the recovery for the failure to perform, without her fault, a duty owing to her by the company was shown, and it is immaterial whether such failure be one of omission or of commission.

7. When the train arrived at Minneapolis it stopped for five minutes, the porter assisted the other passengers from the car and the conductor went to look for the friends of the plaintiff and the ambulance. He found neither, but procured an invalid chair at the depot to be brought by the depot porter and went back to the car. In the meantime a Great Northern passenger train had pulled into the depot on a track between the one to which the Pullman car was attached and the gateway of the depot. The invalid chair was carried around the end of that train a further distance and more time was consumed in getting it to the train by reason of such obstruction. When the depot porter got around the end of the Great Northern train with the chair the train to which the Pullman was attached, having made its usual stop, was starting. The defendant introduced evidence tending to show that the porter of the Pullman car then pulled the bell cord, but the engineer failed to stop the train. The jury evidently did not attach much weight to this testimony, for by their answer to the 4th interrogatory they found that after the train started neither the Pullman conductor nor the porter attempted to stop the train by pulling the signal cord or otherwise. Interrogatory number 14 was as follows: "After plaintiff got on the train at Billings did the con-

ductor of the Northern Pacific Railway Company's train have knowledge that plaintiff was on the train, in a sick and helpless condition? To this question the jury answered "No." Returning to question No. 2, the jury by its answer found that considering the condition of plaintiff's health it was necessary to have a stretcher or some other suitable means in order to assist plaintiff to disembark safely and without danger to her health. It is true that the Pullman conductor did not find a stretcher at the depot in Minneapolis, but an invalid chair was produced. No effort was made to hold the train as found by the jury, so that plaintiff could safely disembark, nor, as the jury found, was the conductor of the train notified of plaintiff's predicament. Had he been so notified we think upon principles of humanity he would have delayed the train three or four minutes, and the jury found that would have been sufficient, by their answer to interrogatory 17, to have enabled the porter to have carried her out of the car and deposited her in the invalid chair. The failure to so inform the conductor of plaintiff's condition and the necessity of assisting her to disembark was evidence of negligence for which the company was liable. We see no conflict in the special findings and the general verdict, or inconsistency in the findings themselves. The trial court did not err in overruling defendant's motion for a new trial on this ground, nor in denying defendant's motion for judgment on the special findings.

8. It is assigned as error that the verdict and special findings are not supported by the evidence. We are of the opinion that this assignment can not be sustained, and that the discussion of the other questions sufficiently disclose our reasons therefor without going specifically or more fully into this question.

9. The defendant alleged misconduct on the part of the jury in the method of arriving at the amount of their verdict, and relies upon the affidavits of E. N. Campbell and J. F. Mills, two of the jurors, in support of its contention and who deposed that "It was agreed among the jurors that each jury-

man should set down the amount of plaintiff's recovery, and that the amounts so set down by the respective jurors should be added together and the sum divided by twelve, and the result, or quotient should represent the amount of plaintiff's recovery in said cause," and that acting in pursuance of this agreement the said jurors set down the amounts they respectively found for plaintiff and then added these respective amounts together and divided the sum by twelve and the result or quotient was thereafter voted as the amount of plaintiff's recovery and so found by their verdict. No counter affidavits were filed. The question as to whether or not the verdict was a quotient verdict, and if so, whether a new trial should be granted for that reason, is not properly presented by this record. We have no statute like that of California and some other states, (Dixon v. Pluns, 98 Cal. 384, 33 Pac. 268, 20 L. R. A. 698, 35 Am. St. Rep. 181) permitting misconduct of a jury to be shown by a juror's affidavit. In Colorado a statute provided that certain misconduct of jurors may be shown by their affidavits and in Pawnee Ditch, &c., Co. v. Adams, 1 Colo. App. 250, 252, 28 Pac. 662, 663, in discussing the question the court say: "The difficulties which juries experience in arriving at a conclusion in cases where the damages to be assessed are unliquidated, and to be measured by what may be gathered from the varying opinions of witnesses, have led the courts to permit these verdicts to stand whenever the proof has satisfied them that the finding has subsequently been voted on and accepted by the jury as the legitimate expression of their deliberations. In most cases very little proof in this direction has been required." This seems to be the general rule and was reaffirmed and applied by the Supreme Court of that state in Greeley Irr. Co. v. Von Trotha, 48 Colo. 12, 108 Pac. 985, 989. In the case here it appears by the affidavits that the result or quotient after having been found was voted on by the jurors and ratified as the amount of plaintiff's recovery and so returned by their verdict. But as we have no statute like the one above referred to it is unnecessary to determine what

the correct rule in such case would be. It was expressly held by this court in Bunce v. McMahon, 6 Wyo. 24, 41, 42 Pac. 23, that the affidavit of jurors can not be received to impeach their verdict. It was in effect so held in Gustavenson v. State, 10 Wyo. 300, 68 Pac. 1006. That being the settled rule in this state the affidavit of the jurors relied upon by the defendant could not be received and considered by the trial court to impeach their verdict on the ground of their misconduct. They were not competent proof of the facts therein deposed to, and the court properly refused to grant a new trial upon this ground.

10. There are several assignments of error predicated upon the alleged misconduct of plaintiff's counsel. First: After the evidence was all given and the case closed, and the court was about to instruct the jury, the plaintiff's counsel brought into court two suit cases, one a black leather suit case, and the other a light red suit case, and exhibited them to the jury, and stated in the presence and hearing of the jury, that said suit cases were the suit cases referred to in plaintiff's testimony in said case. Upon exception being taken to such alleged misconduct it is recited in the bill as follows:

By Mr. Stotts: "The plaintiff states in reply to what has been noted above that when we closed the proceedings in this case last Saturday evening, and while the court was in session and the jury impaneled and sitting in the box, and while one of the witnesses for plaintiff was being examined, counsel for the plaintiff stated to the attorney for the defendant that he would produce the suit cases so that the color of them might be known, and that counsel for the defendant requested that that be done. And for that reason, and that reason only, they were produced in court at this time. And before the court entered upon the instructions to the jury in this case, counsel for plaintiff offered to prove by plaintiff that these were the suit cases referred to."

By Mr. Kutcher: "Counsel for defendant still excepts to the misconduct of counsel aforesaid, and further excepts to

the misconduct of counsel in the statement made at this time."

By the court: "The suit cases are not in evidence, and will not be considered by the jury."

Second: During the opening argument of plaintiff's argument to the jury he used the following language: "Why do we enter—why do we enter—gentlemen, a sleeping car, and pay those exorbitant prices, if it is not that we will be treated fairly and a little better?" Whereupon the defendant's counsel at the time excepted to said language, as follows: "Defendant excepts to the remarks of counsel in stating that people are compelled to pay exorbitant prices for this service." Plaintiff's counsel then said: "Well, they are, and they have been compelled by the railway commission in some states to reduce their rates." To which last remark exception was reserved and the court refused upon request to instruct the jury to disregard it.

Third: During his opening address the plaintiff's counsel used the following language to which exception was taken and also to the refusal of the court upon request to instruct the jury to disregard the same, viz.: "It is for you, gentlemen, to judge—it is for you, gentlemen, to judge, whether those (referring to plaintiff and the witness, Miss Hubbard) are committing perjury, or whether he is (referring to defendant's conductor). He has got to hold his job."

Fourth: During the closing argument plaintiff's counsel used the following language to the jury, viz.: "Charley says we are not entitled to anything. We will get something out of that bloated corporation with its millions, we will get something out of it." This language was excepted to and the court was requested to instruct the jury to disregard it. The court then stated as follows: "The jury will decide the case on the evidence and not on the remarks of counsel." The bill of exceptions recites that "To the omission of the court to instruct the jury to disregard such remarks and to restrain counsel in the use of such language the defendant duly excepted."

Fifth: During the closing argument counsel for plaintiff used the following language: "They (referring to the defendant) have the right to go over your land. They can move your house out of their way, and do it, of course, by paying the damages; they have their rights, they don't care for the people. They go where they want to." Objection was made and exception taken to these remarks and the court was requested to instruct the jury to disregard them, whereupon the court stated: "The jury shall not take into consideration anything outside of the evidence in this case." It is also recited in the bill that "To the omission of the court to restrain counsel in the use of such language the defendant duly excepted."

Sixth: Referring to the special interrogations which were submitted to the jury counsel said in his closing remarks to the jury: "And it would be well for you to go over the instructions of the court thoroughly, and then study these questions thoroughly, because they catch." Objection was made and exception taken to this language. The court made no ruling or statement to the jury in respect thereto and to its refusal so to do or to restrain counsel and instruct the jury to disregard such remarks an exception was reserved.

Without discussing at length the first alleged misconduct of plaintiff's counsel in bringing the valises into the court room and giving his reasons for so doing in the presence of the jury we are of the opinion that he had a right to have his reasons for bringing them there made a matter of record in answer to defendant's objection, and to show that he intended no misconduct. They were brought into the court room with the assent and at the request of the defendant's attorney so that the color might be known, and in that state of the record the defendant is not in a position to urge prejudicial misconduct in producing them for inspection, or in the offer to prove that they were the same valises referred to in the evidence of a former witness. Furthermore, the court said in the presence of the jury that the suit cases were not in evidence and would not be considered by them. We

are of the opinion that the prejudice, if any, which might have arisen from bringing the suit cases into court was removed by the court's direction to the jury.

The abuse of the right of argument by counsel to the jury has been the subject of much litigation. It is said at sec. 958, Thomp. on Trials, (2nd Ed.) that "All courts agree that it is the duty of the presiding judge, either of his own motion, or upon the request of the opposing party, or his counsel, to interpose and check the party or his counsel in an improper or prejudicial line of argument." If the court when requested fails or refuses to interfere and administer the proper rebuke or correction then such failure or refusal may be made the ground for a new trial. The question as to whether the counsel should be so checked and cautioned is one resting largely in the sound discretion of the trial court (sec. 958, Thomp. on Trials) and unless it affirmatively appears from the record that there has been an abuse of discretion in that respect this court would not be justified in awarding a new trial. It will be observed with reference to the remarks objected to under the fourth ground of complaint that the court said: "The jury will decide the case on the evidence and not on the remarks of counsel"; and that in response to the objection to the language objected to under the fifth ground of complaint the court again said to the jury as follows: "The jury shall not take into consideration anything outside of the evidence in this case." The effect of this language, we think, was to convey to the minds of the jury that they were limited in considering the case and arriving at their verdict to the evidence and to exclude the remarks objected to. The jury was also told in the charge that it should decide the issues alone upon the law as given by the court and the facts proven upon the trial.

The second alleged ground of complaint, we think, is without merit. The counsel for plaintiff certainly had a right to comment on the reason for the payment for Pullman car accommodations. That the price exacted for the same was denounced as exorbitant was not prejudicial. It

was the expression of an opinion and grew out of 'the evidence as to the treatment of plaintiff as a paid passenger. We think it was within the legitimate scope of argument and that the objection was without merit and would in the heat of argument have a tendency to draw forth the further remark in answer thereto to which objection was made and exception taken.

The third alleged ground of complaint is likewise without merit. The remarks were with reference to a conflict of the evidence given by two witnesses and which of them the jury would believe. While the language might have been couched in softer terms and the.same meaning conveyed yet we do not think the language exceeded the rights of argument.

The comment upon the interrogatories was not prejudicial. As shown by the record they were submitted to the court in part by each of the parties through and by their respective attorneys, and by the court submitted to the jury. It is a well-known fact that attorneys in their zeal to win a case often draw up such questions so skilfully that jurors without the perception or skilled mind of the attorney are unaware of the importance of exercising great care in answering the questions without caution as to the effect of the answer returned to each. This is a legitimate subject of comment to the jury based upon the evidence and the theory deducible therefrom. We do not think, as here contended, that the comment complained of was to the effect that the jury should answer the questions so as to harmonize with the general verdict, regardless of the evidence, but to so answer the questions upon the evidence that there should be no conflict. In effect, counsel told the jury to carefully read the instructions given by the court and then study the questions carefully. We cannot believe that the words "because they catch" were intended as a reflection upon the court. It does not so affirmatively appear, but rather as a method of arousing in the minds of the jury the necessity for that degree of care which might preserve their verdict.

It may be said generally as to misconduct of counsel such as here complained of that they are questions which must be preserved by exception and motion for new trial in the court wherein the alleged misconduct occurred.  It was so done in this case, but the judge who presided at the trial having had the parties before him was better able to say whether the party complaining was prejudiced or not.  The conclusion reached by him in denying a motion for a new trial was based in part at least on his personal observation.  At the time of the alleged misconduct he told the jury not to consider anything outside of the evidence, and to decide the case upon the evidence and not on the remarks of the counsel. This, we think, was not only specific but general in its·application and it does not appear that the counsel persisted in repeating or enlarging upon any specific remarks or continued any line of argument after objection except as to the exorbitant charges of the Pullman company which, as we have already stated, was in response to an objection which was unnecessary and without merit.

11.  The court said to the jury in its charge: "It is not denied that the plaintiff did suffer inconvenience, distress, anguish of mind, pain, delay and expense by being carried past her destination, but before you can render a verdict in her favor you must find that these matters are directly attributable to some neglect or wrongful act on the part of the defendant company, its agents or employees." This instruction was based upon the evidence and not on the issues as made by the pleadings for in an earlier part of the instructions the jury were told what the issues were as made by the pleadings.  The plaintiff's evidence showed that she did suffer inconvenience, distress, anguish of mind, pain, delay and expense by being carried beyond her destination.  As opposed to this evidence John Davis, witness for defendant, testified that she was in good spirits and even joked about riding in a baggage car on her return trip from St. Paul to Minneapolis.  Assuming that she did so joke, that fact of itself did not negative inconvenience, delay and expense by

reason of being carried past her destination, and as to distress, anguish of mind and pain the negation by Davis' testimony was so slight that in our judgment it would not warrant this court in holding the above statement of the court to be erroneous and prejudicial. We have examined the entire charge and think it fairly stated the law of the case to the jury. We perceive no prejudicial error. The judgment will be affirmed.                    *Affirmed.*

BEARD, C. J., and POTTER, J., concur.