In the Matter of the ESTATE OF Verlie O. ALTMAN, Deceased.

Elizabeth DAINTON, Richard Boogaart and Wanda B. Sorem, Appellants (Contestants),

v.

Minerva C. WATSON, Appellee (Proponent).

No. 5685.

Supreme Court of Wyoming.

Aug. 31, 1982.

Patrick L. Fagan of Fagan & Fagan, Casper, for appellants.

Alfred G. Kaufman, Jr., Lusk, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

This is an appeal from a judgment rendered on a jury verdict in favor of the appellee-proponent in a will contest action in which appellants-contestants sought to set aside decedent's will on the grounds that its execution did not conform to statutory requirements, thus resulting in insufficient proof of the will. Two issues are presented on appeal: (1) Was the verdict supported by substantial evidence; and (2) did error result from the comment made by counsel for appellee in his closing argument concerning that which appellee observed at the time the subscribing witnesses signed the will?

We affirm.

## SUBSTANTIAL EVIDENCE

When an issue on appeal involves the sufficiency of the evidence, we must apply the following standard:

" * * * We will not substitute our judgment on the facts for the jury's in the presence of substantial evidence. On appeal we assume the evidence in favor of the successful party is true and leave out of consideration entirely the evidence presented by the unsuccessful party in conflict therewith, and we give the evidence of the successful party every reasonable inference that may be reasonably drawn from it. * * * " *Distad v. Cubin,* Wyo., 633 P.2d 167, 180 (1981).

■ A review of the record reflects the existence of substantial evidence favorable to appellee, the successful party, concerning the pertinent issue. The pertinent issue is whether or not the subscribing witnesses to the will, Marty Fernau and Gemila Stetson, each signed the will under the conditions prescribed by § 2–6–112, W.S.1977. Such section provides in pertinent part:

" * * * [A]ll wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction. * * * "

In this respect, both subscribing witnesses, Marty Fernau and Gemila Stetson, furnished sworn affidavit testimony in writing pursuant to § 2–6–205(a), W.S.1977. Section 2–6–205(a) provides in pertinent part:

" * * * [P]roof of a will may be made by the oral or written testimony of one or more of the subscribing witnesses to the will. If the testimony is in writing, it shall be substantially in the following form * * *."

The form was used for the testimony of both subscribing witnesses in this case. That subscribed and sworn to by Marty Fernau reads as follows:

"I reside in the County of Natrona[,] State of Wyoming; I knew the testator on the 7th day of July[,] 1977 the date of the instrument, the original or exact re-

production of which is attached hereto, now shown to me, and purporting to be the last Will and Testament of the said Verlie O. Altman[.] I am one of the subscribing witnesses to said instrument; and on the said date of said instrument, I knew Gemila Stetson[,] the other subscribing witness; and said instrument was exhibited to me and to the other subscribing witness by the testator, who declared the same to be his Last Will and Testament, and was signed by the testator at Lusk in the County of Niobrara[,] State of Wyoming on the date shown in said instrument, in the presence of myself and the other subscribing witness; and the other subscribing witness and I then and there, at the request of the testator, in the presence of said testator, and in the presence of each other, subscribed our names thereto as witnesses."

That subscribed and sworn to by Gemila Stetson was worded the same, except that the name "Marty Fernau" replaced the name "Gemila Stetson." The affidavits and their contents were made known to the jury.

Additionally, Gemila Stetson testified in part as follows:

"Q. You witnessed the signatures, all right. And was Verlie there?

"A. Yes, sir.

"Q. Was Marty there?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. And was Verlie sitting at the desk, or do you know where was he, I should say?

"A. He was sitting to Minerva's right. She was sitting in behind her desk, and then he was sitting to her right.

"Q. And then were you and Marty standing there?

"A. Yes, sir.

"Q. And Marty signed first and then you signed it?

"A. That's right.

\* \* \* \* \* \*

"Q. And you saw Verlie sign it then?

"A. Yes.

"Q. In front of you?

"A. Yes.

"Q. He signed it in front of you?

"A. Yes.

\* \* \* \* \* \*

"Q. But you did see, and according to that affidavit, Verlie sign that will?

"A. Yes, sir.

"Q. And you also saw Marty Fernau sign as a witness before you?

"A. That's right.

"Q. And you signed second on that will?

"A. That's right."

Marty Fernau testified in part as follows after reading the above-quoted affidavit to the jury:

"THE COURT: Signed by you?

"A. Yes.

"Q. (by Mr. Kaufman) And is 2834 Cherokee Lane your address in Casper, or was it then?

"A. It is.

"Q. And it was notarized?

"A. Yes, sir.

"Q. Gayle M. M-o-h-l; is that correct?

"A. Yes.

"Q. Now, Marty, I want to show you Proponent's Exhibit A [the will]. You testified earlier that your signature is on there and Gemila's, right?

"A. Yes, sir.

"Q. And Verlie's, you recognize Verlie's. I want you to read that last paragraph of the will.

"A. Out loud?

"Q. It is the only way.

"A. 'This instrument was on the day of the date therof [sic], signed, published, and declared by the said testator, Verlie O. Altman, to be his last Will and Testament in the presence of us who at his request have subscribed our names thereto as witnesses in his presence and in the presence of each other and who do hereby certify that at the time of the execution of said will, the testator was of sound and disposing mind and memory and understanding and under no restraint.'

"Q. And you signed your name under that?

"A. Yes, sir, I did."

Appellee Minerva C. Watson testified in part:

"Q. Now, in the day in question, did you see anybody sign anything?

"A. Yes, I did.

"Q. And if so, tell us in what order?

"A. Verlie Altman came in, sat at the edge of my desk and read the will himself. I did not read it to him. No one else read it to him. He was able to see well enough to read it himself. Marty Fernau came in the office. I went back to get Gemila and asked her to come in and asked her if she would like to witness Verlie Altman's will, so she came back with me. Verlie Altman was sitting at my right hand along the side of my desk. Gemila and Marty were standing in front of me, and to the best of my knowledge, I will swear to it, that Verlie Altman signed that will, and then Marty signed it, and then Gemila signed it.

"Q. And they were all together when the signatures were affixed to your recollection?

"A. Yes, sir."

The foregoing is substantial evidence sufficient to support the jury verdict.

■ Marty Fernau did also testify that he did not sign the will in the presence of the testator or Gemila Stetson but that it was brought downstairs to his store by appellee where he signed it. The jury obviously did not believe this testimony but opted to believe that testified to by appellee and Gemila Stetson in addition to that set forth in the affidavits of the subscribing witnesses. The determination of credibility of the witnesses is a jury or fact finder function. It is not the function of appellate review. *Cimoli v. Greyhound Corporation*, Wyo., 372 P.2d 170 (1962); *Rossin v. Ward*, Wyo., 363 P.2d 919 (1961); *Millar v. Millar*, Wyo., 369 P.2d 207 (1962). The conflicting evidence in this case was presented to the jury. It found the facts in favor of appellee. There was substantial evidence to support such finding.

## CLOSING ARGUMENT COMMENT

In referring to appellee in his closing argument, appellee's counsel noted that she had disclaimed a bequest under the will and then he said:

" * * * Mrs. Watson could not testify as a competent witness if she was going to be a beneficiary under the will, okay.

"I learned that in the last week or two. That's why I prepared the disclaimer and had her sign it.

"Therefore, her testimony is competent concerning the signing—or no, concerning the viewing Marty Fernau and Gemila Stetson were Verlie's—"

At that point, appellants' counsel interrupted, and the following was said:

"Excuse me, your Honor. I am very reluctant to interrupt counsel, but I believe that is an improper statement of the law.

"THE COURT: I believe it is correct as far as what he has stated now."

■ Appellants argue that the jury could assume from counsel's remarks that Mrs. Watson could qualify as the second subscribing witness to the will in place of Fernau, or that the jury could gather therefrom that her testimony was entitled to more credibility than other witnesses. We think the trial court was correct. Counsel's statement had not reached the point of suggesting that appellee was a substitute for a subscribing witness. Her testimony was proper with reference to the presence of the subscribing witnesses and to the facts observed by her concerning the execution of the will. The trial court properly and adequately instructed the jury relative to the necessity for it to weigh and consider *all* evidence presented to it, relative to evaluation of the credibility of witnesses, relative to the meaning and effect of a disclaimer, and relative to the necessity to render a verdict based on the evidence and not on any statement of counsel in explanation or argument concerning the facts of the case.

■ The exercise of discretion by the trial court with reference to the arguments and conduct of counsel will not be reviewed

absent abuse thereof. *Pullman Co. v. Finley*, 20 Wyo. 456, 125 P. 380 (1912). There is no abuse of discretion in this instance.

Appellants also contend that reversible error results from the fact that appellee's counsel and appellee were talking with witness Stetson in the hall during a recess inasmuch as the following had occurred at the conclusion of the testimony of witness Stetson on a previous day.

"MR. J. FAGAN: Judge Sawyer, I wonder if as a matter of procedure we might ask the Court's permission to exclude this witness subject to recall, and let Mr. Kaufman call what other witnesses he has to prove the will.

"THE COURT: All right."

Rule 615, W.R.E., provides in pertinent part:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. * * *"

The record reflects that the conversation complained about was outside of the courtroom and during a period in which no witness was testifying. We need not here address the scope of a sequester order inasmuch as the record before us does not reflect the making of an objection premised on the incident or the making of a motion for a mistrial or for other relief. Appellants only requested that:

" * * * the record show that Mrs. Stetson has been conferring with Minerva Watson and after Mr. Kaufman left has been conferring with Mrs. Stetson, has now been conferring with Mrs. Stetson, and the Court has ordered her not to do so."

The record does not reflect any effort at, or consideration of, a contempt of court. We are not directed to any court ruling, order or action upon which error is alleged. Unless they go to jurisdiction or are of a fundamental nature, we will not consider on appeal questions not *properly* raised in the district court. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981); *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979).

Affirmed.